**Reinhold DIDIE, Plaintiff–Appellee,**

**Hakan Bennhagen, Plaintiff,**

v.

**Ashley HOWES, Jr., Defendant–Appellant.**

**No. 91–5797.**

United States Court of Appeals, Eleventh Circuit.

April 20, 1993.

Ashley E. Howes, Jr., pro se.

Edward Brigham, Miami, FL, for plaintiff-appellee.

Before KRAVITCH and BIRCH, Circuit Judges, and CLARK, Senior Circuit Judge.

BIRCH, Circuit Judge:

This appeal concerns sanctions under Federal Rule of Civil Procedure 11 in a procedurally convoluted case. The district court denied a renewed motion for sanctions and precluded future motions for sanctions. On the record in this case, we REVERSE and REMAND for an evidentiary hearing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the complaint in this case, from May, 1988 until April, 1989, plaintiff-appellee Reinhold Didie, a Florida resident, and defendant-appellant Ashley Howes, Jr., presently a North Carolina resident, entered into a joint venture to repair and restore a motor yacht[1] in Dade County, Florida. Following the restoration, Didie and Howes planned to move the yacht to the port of Romana in Santo Domingo, where it could be chartered for sightseeing excursions. The resulting income was to have benefitted Didie and Howes.

Because of a health problem, Howes was unable to provide physical labor for the restoration. From February, 1989 until April, 1989, plaintiff Hakan Bennhagen, a Swedish resident, lived on the yacht and

---

1. The 103-foot motor yacht is known as the "SUNSET."

assisted with the restoration. He stored a significant amount of personal property aboard the vessel, including diving equipment, cash and cameras. On April 3, 1989, Didie telephoned Howes in North Carolina to alert him to unforeseen difficulties that had arisen relating to financing the restoration. On April 7, 1989, Howes took the yacht from the possession of Didie, while Didie was absent from the vessel for a short time. Howes subsequently communicated to Didie that he would not return the yacht or the personal property of Didie and Bennhagen aboard the vessel. Howes justified the taking by claiming that Didie had defaulted on one of their agreements.

Didie and Bennhagen filed this action, alleging breach of contract, fraudulent misrepresentation, malicious conversion, breach of fiduciary relationship, and estoppel, in the Southern District of Florida on May 16, 1989. Essentially, Didie and Bennhagen contend that Howes failed to supply the labor and funds necessary to restore the yacht and that he took the vessel by stealth with their personal property aboard, after wrongfully asserting that Didie had breached their contract. When Howes had not been served approximately five months later, the district court ordered the plaintiffs to show cause why the case should not be dismissed. Because the plaintiffs failed to respond, the district judge dismissed the case without prejudice.

Thereafter, the district court vacated the order of dismissal based on plaintiffs' motion for relief and their representation that Howes had been served, but that the return of service inadvertently had not been filed. The district court subsequently ordered a default judgment *sua sponte* against Howes because he had not filed an answer. The district judge also entered identical orders granting final judgment to Didie and Bennhagen in the amount of $20,000.

Howes then filed a pro se motion to set aside the judgment and asserted that he did not file an answer because he thought that his attorney had arranged a settlement with Didie's attorney. In view of the pending settlement, he further explained that the attorneys had agreed that the return of service would not be filed with the court, obviating the need for him to answer the complaint. If settlement was not reached, then Didie's attorney would give his attorney a ten-day notice that the return of service would be filed. Howes also represented that Didie removed his personal property from the yacht, and that neither he nor his attorney subsequently heard from Didie or his attorney. Accordingly, Howes and his attorney thought that the matter had been settled and that the cause of action had expired. Approximately one year later, Howes received a copy of the final judgment.

The district court granted Howes's motion, vacated the final judgment, and ordered Howes to answer the complaint. Not only did Howes answer the complaint through counsel, but also he filed a counterclaim against Didie and Bennhagen for breach of contract. In support, Howes submitted a copy of a letter of intent executed by Howes and Didie, which stated that Didie would have a right of first refusal to purchase the yacht from Howes in exchange for Didie's labor on the boat. He also provided a copy of the contract executed by Howes and Didie for sale of the yacht, which states that Didie was to purchase the ship from Howes in return for Didie's labor plus $144,520, payable in installments. Additionally, Howes included pictures of the items on board the yacht at the time that he repossessed it.

Howes filed a motion to dismiss for lack of subject matter jurisdiction and alleged that the complaint concerned state law claims and that diversity jurisdiction did not exist.[2] Additionally, Howes filed a mo-

**2.** Citing *Delome v. Union Barge Line Co.*, 444 F.2d 225, 233 (5th Cir.), *cert. denied,* 404 U.S. 995, 92 S.Ct. 534, 30 L.Ed.2d 547 (1971), Howes explained that plaintiffs had failed to allege complete diversity inasmuch as Howes's residency in Pinehurst, North Carolina, did not serve to allege citizenship in North Carolina. Despite their current states of residence, Howes represents that he and coplaintiff Didie were both citizens of Florida when the cause of action arose and the complaint was filed.

tion for judgment on the pleadings or for partial summary judgment and a supporting affidavit. In response to Howes's motion to dismiss based on lack of subject matter jurisdiction and after almost two years of litigation, Didie and Bennhagen admitted that "there is no real diversity" and that the sale contract presented with Howes's counterclaim was illusory and "not a maritime contract." R1–42–2, 3. Nevertheless, Didie and Bennhagen asserted that their claims were *in personam* admiralty claims for the reasonable value of their labor and the items aboard the ship. Finding that the complaint failed to allege diversity jurisdiction and that admiralty jurisdiction did not exist, the district court granted Howes's motion and dismissed plaintiffs' complaint without prejudice and all pending motions as moot, including Howes's motion for judgment on the pleadings or summary judgment to which plaintiffs did not respond. The court, however, allowed plaintiffs thirty days within which to file an amended complaint properly invoking federal jurisdiction.[3] For the same reasons relating to plaintiffs' complaint, the district court also dismissed Howes's counterclaim without prejudice. In view of the rulings, the district judge canceled the previously scheduled pretrial conference.

When Didie attempted to file an amended complaint beyond the thirty-day period set by the court in its prior order, the district judge ordered the case closed and informed Didie that proceeding with the case would require a new complaint, appropriate costs and fees, and a new case number from the clerk of court. In addition to a motion to tax costs filed by his attorney, Howes filed a pro se motion to impose sanctions pursuant to Federal Rule of Civil Procedure 11, the subject of this appeal. As a preface to his substantiating contentions, Howes states:

As a party in this case I allege that the Plaintiffs have intenti[on]ally presented false information; and that the attorneys have failed to investigate[ ] signed facts; that after discovery, the attorneys failed to withdraw fallacious claims or suppl[e]ment their Claims; that this case has been p[u]rsued with excessive persever[a]nce, harassment and improper purpose; that unnecessary delays have been created; that the legal work was sloppy and ill[ ]advised; and that sharp practices were used. Demonstrating it will be lengthy.

R2–53–2.

Within his motion for Rule 11 sanctions, Howes explains that, as sole owner of the yacht, he hired Didie to help him in "beautif[y]ing the vessel to sell it." *Id.* at 1. He agreed to pay Didie with the proceeds of the sale, or to credit Didie's labor toward Didie's purchase of the ship. He subsequently entered into a contract with Didie for the sale of the ship. Didie defaulted on the first payment and Howes's attorney issued a notice of default. Thereafter, Howes repossessed the ship.

Howes alleged that Didie's attorney Edward Brigham wrote his attorney a letter stating that the boat was stolen, which was untrue because Didie knew that it had been repossessed. He further alleged that Brigham agreed to meet him at the yacht with a van and a helper to dismantle a generator owned by Didie on the ship, and to finalize arrangements to remove the rest of his belongings. Instead, Brigham spent several hours inspecting the ship, said that the generator was too heavy, and served Howes with the complaint.

Howes alleged that Brigham contended that the lawsuit was merely to ensure that Didie's possessions were returned. He stated that Brigham conceded that, even if

---

**3.** Within the order of dismissal without prejudice, the district judge admonishes that

[C]ounsel who choose to practice in federal court should make an effort to learn the rules relating to the Court's jurisdiction. When a complaint is filed, it should allege sufficient facts to indicate that the court has jurisdiction over a particular matter. Neither party's pleadings meet this minimal standard, and this Court, overwhelmed with criminal cases, simply does not have the time to review motions which correct previously filed motions intended to correct improperly drafted civil pleadings.

R1–46–6 n. 5.

the lawsuit had no foundation, it would cost Howes $10,000 in legal costs to prevail. Howes represented that Brigham offered to negotiate the costs as a settlement and told him that he could save Howes $5,000 in costs if he gave Didie $5,000. Howes stated that Didie spent two days in June, 1989, removing everything that he wanted from the yacht.

Howes specified alleged inaccuracies and false claims in plaintiffs' pleadings. He asked that the court sanction Brigham rather than the plaintiffs.[4] Including attorney's fees, Howes represented that his legal fees for defending the case were $14,197.66. He stated that "[e]ither the eviden[c]e prof[f]ered herein is sufficient to warrant findings of violations of Rule 11 with sanctions, or if there is a matter of credibility of Brigham or myself or both, *then this Court may conduct an examination by whatever means that it need."* *Id.* at 17 (emphasis added).

Brigham responded that Howes "maliciously" filed the Rule 11 motion "in an improper attempt to reduce his [Howes's] reasonable attorney fees" and to intimidate plaintiffs and their attorneys into discontinuing the litigation. R2–54–1. Brigham also asserted that the motion is "untrue, inaccurate and unfounded." *Id.* Attached to Brigham's response is an unsigned document analyzing and denying Howes's claims of wrongdoing and arguing that many of Howes's allegations were matters of disputed fact. Brigham requested the court to strike Howes's motion for Rule 11 sanctions "after an evidentiary hearing," provided the court deemed a hearing necessary. *Id.* at 2.

Howes replied to Brigham's response and explained that he was caring for his ninety-one-year-old father in North Carolina and that travel to Miami concerning this litigation required his hiring caretakers for his father. In challenging the truthfulness of Brigham's response, Howes states that "I have submitted over two dozen Exhibits as well as used both Court documents and the depositions. Brigham has produced nothing of substance .. only allegations." R2–56–8. Brigham filed a rebuttal to Howes's reply in which he added speculative, irrelevant and conclusory arguments to his previous contentions. Brigham requested that the district court strike or dismiss Howes's motion for Rule 11 sanctions against him.

The district court subsequently denied Howes's motion to tax costs and dismissed his motion for Rule 11 sanctions based on the local rule that a party with an attorney may not appear pro se absent leave of court. Thereafter, Howes filed a pro se motion requesting a hearing on his motion for Rule 11 sanctions. In his motion, Howes stated that both parties had requested a hearing on his sanctions motion in accordance with the local rule requiring that a request for a hearing must accompany the motion or opposing memorandum.[5] Howes explains that

> despite the fact that Defendant submitted a preponderance of evidence, and the Plaintiff has not offered a scintilla of evidence, it is doubtful if sanctions can be imposed or if the entire case can be thrown out without further confrontation and examination, a necessary part of due process. Obviously *Credibility* is a major issue; and this makes a Hearing necessary and unavoidable. Further, claims of harassment, malicious intent, and failure to investigate facts or to knowingly

---

4. Concerning Howes's reason for wanting sanctions imposed against Brigham rather than Didie, Howes states in his pro se motion that "although Didie is not always truthful, he does not have the sophistication to have trumped up the story of the 'joint venture,' the telephone call, and the business about trust, reliance and a f[i]duciary relationship." R2–53–16.

5. The local rule pertaining to motions for hearings provides:

> A party who desires oral argument or a hearing of any motion shall request it in writing by separate request accompanying the motion or opposing memorandum. The request shall set forth in detail the reasons why a hearing is desired and would be helpful to the Court and shall estimate the time required for argument. The Court in its discretion may grant or deny a hearing as requested, upon consideration of both the request and any response thereto by an opposing party.
> S.D.Fla.Local R. 10.B.1.

misrepresent are cumulative, synergetic and require a Hearing.

R2-62-1-2. Thereafter, Howes's counsel filed an unopposed motion to withdraw as his attorney and requested that Howes be permitted to file his motion for Rule 11 sanctions without the impediment of non-compliance with the local rule.

Howes then filed a motion requesting to proceed pro se and asking the district court to reconsider his motion for Rule 11 sanctions. He explained that the court's order dismissing his Rule 11 motion crossed in the mail with his motion for a hearing on his sanctions motion, which was moot as a result of the court's ruling. Howes also requested the court's clemency in the continuance of his case. He explained that he was sixty-three, unemployed, and had spent over $15,000 in attempting to litigate this action, which had been dismissed twice without prejudice. Without an opportunity to try the case, Howes asserted that the only avenue available to the court to elicit the truth was through his Rule 11 motion:

> Will truth ... out, if not in trial then in Rule 11? Where is the arena of account[a]bil[i]ty if it is not either in trial or Rule 11?
>
> With his back to the wall Defendant pleads that Rule 11 consideration is both to protect the overburdened Court and hapless Defendants by blocking and penalizing improper suits. If Rule 11 is not considered in this case, th[e]n the Court loses and the Defendant has been badly ravaged, simply because of the costs of defense in U.S. District Court. And the main purpose of Rule 11 was to prevent this. *Therefore*, please proce[e]d[ ] by motion or Sua Sponte to consideration of Rule 11 in this case.

R2-64-2.

Howes subsequently filed a motion to supplement his motion to impose Rule 11 sanctions in reply to Brigham's response adding new violations. Thereafter, he filed a supplement to his original Rule 11 motion stating numerous factual disputes with Brigham's response to his original motion. Howes states that he filed the supplement to his original motion

because Plaintiff's attorney has created in his *Rebuttal,* which is probably untimely but nevertheless as a filing in this Court and signed by him and consequently subject to Rule 11, fresh and new violations to Rule 11 with potential sanctions. Specifically, Plaintiff's attorney has proffered facts totally untrue and subs[e]quently are further examples of either failure to investigate or are intentional, known falsehoods.

R2-66-1.

While recognizing Howes's pro se status by serving him with a copy of its ruling, the district court denied his motion for a hearing on Rule 11 sanctions as moot. Two days later, the district court granted Howes's motion to proceed pro se and allowed his attorney to withdraw, granted his motion for reconsideration of his motion for Rule 11 sanctions and, without explanation, denied his motion for sanctions on the merits; and denied his motion for clemency. Three days later, the district court denied Howes's motions to supplement his original Rule 11 motion as moot, since his motion to impose Rule 11 sanctions had been denied.

In response to these rulings by the district court, Howes filed on August 8, 1991, a motion requesting reconsideration of the denial of his motion for Rule 11 sanctions as well as his previous motions to reconsider and to supplement his original motion, and asked the court to clarify or explain its rulings on the merits. Howes reiterated the factual discrepancies that were evident in the two parties' Rule 11 motions and responses, and charged that Brigham certified facts to the court untruthfully. Having been forced to defend a case in which plaintiffs were unable to establish either diversity or admiralty jurisdiction after two years and three dismissals at substantial cost to Howes, he implored the court to explain "why Brigham's actions do not merit imposition of Rule 11" sanctions and found it "inconceivable that claims can be made based upon no direct knowledge by either Brigham or Didie without any investigation." R2-70-4, 5. Howes explains that he

has pointed out the failure to refute or even dispute evidence of allegations. Defendant in these papers has tried to better focus upon the issues which are complex. And having done so, Defendant believes that he is entitled to know, by amplification of the Court, either why his motion was denied, or if all is reconsidered and consolidated, how the new decision to affirm or deny is reached.

*Id.* at 7.

Without any explanation, the district court denied Howes's consolidated motion as follows:

The Court has reviewed the Defendant's multiple motions, filed August 8, 1991. After due consideration, it is hereby

ORDERED and ADJUDGED that said motions be and the same are hereby DENIED. The Court shall not entertain any additional motions relating to Defendant's Rule 11 Claim. *The failure to obey this Order may result in the imposition of sanctions upon Defendant.*

R2–72. The district court's order was filed August 14, 1991. Howes appeals this final ruling by the district court denying reconsideration of his motion for Rule 11 sanctions.

## II. DISCUSSION

### A. *Jurisdiction*

On September 9, 1991, Howes appealed the district court's August 14, 1991 postjudgment order, denying his multiple motions relating to his motion for Rule 11 sanctions. This court has recognized that a final judgment does not necessarily end a lawsuit, and that a postjudgment order, which is the last order entered in an action, is final and appealable. *Delaney's Inc. v. Illinois Union Ins. Co.,* 894 F.2d 1300, 1304 (11th Cir.1990); *see Board of Pub. Instruction v. Braxton,* 326 F.2d 616, 618 (5th Cir.) (An order is final when "nothing further is left to be done by the trial court."), *cert. denied,* 377 U.S. 924, 84 S.Ct. 1223, 12 L.Ed.2d 216 (1964). Accordingly, the district court's postjudgment order denying Rule 11 sanctions is a properly appealable final order, and Howes's appeal was timely. Fed.R.App.P. 4(a)(1); *cf. BankAtlantic v. Blythe Eastman Paine*

*Webber, Inc.,* 955 F.2d 1467, 1478 (11th Cir.1992) (Almost a year after final judgment was entered, a motion for Rule 11 sanctions was filed and denied in district court, and reviewed by this court on appeal.), *cert. denied,* —— U.S. ——, 113 S.Ct. 966, 122 L.Ed.2d 122 (1993).

Additionally, a district court has the authority to consider and rule upon the collateral issue of sanctions, although the case from which allegedly sanctionable conduct arose is no longer pending. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 396, 110 S.Ct. 2447, 2456, 110 L.Ed.2d 359 (1990). The Court reasoned that a determination on sanctions is not a judgment on the merits, but a decision as to whether an attorney has abused the judicial process. *Id.* A Rule 11 violation is complete when the offending document is filed. 496 U.S. at 395, 110 S.Ct. at 2455. Moreover, the Court has extended this analysis to hold that a district court appropriately may impose Rule 11 sanctions in a case in which the district court subsequently is determined to have been without subject matter jurisdiction. *Willy v. Coastal Corp.,* —— U.S. ——, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992).

### B. *Denial of Rule 11 Sanctions*

Appellate courts review all aspects of a district court's Rule 11 determination for abuse of discretion. *Cooter & Gell,* 496 U.S. at 405, 110 S.Ct. at 2461. In pertinent part, Rule 11 provides that

The signature of an attorney or [unrepresented] party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon

motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11. "Rule 11 sanctions are designed to 'discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.'" *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir.1987) (en banc) (quoting *Pin v. Texaco, Inc.*, 793 F.2d 1448, 1455 (5th Cir.1986)). They "may. be imposed for the purpose of deterrence, compensation and punishment." *Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1334 (11th Cir.1992). Under Rule 11, a district judge "shall" or *must* impose sanctions for a violation.[6] *See Collins v. Walden*, 834 F.2d 961, 964 & n. 2 (11th Cir.1987) (The district judge "was compelled to impose Rule 11 sanctions" for a complaint that was "factually groundless and patently frivolous."). When a pleading, motion or other paper is determined to be in contravention of Rule 11, the signing attorney and/or the party represented are subject to appropriate sanctions. Fed. R.Civ.P. 11; *Willy,* —— U.S. at —— n. 1, 112 S.Ct. at 1079 n. 1; *see Collins*, 834 F.2d at 966 (The district court properly sanctioned both the plaintiff-appellant and his attorneys.).

■ Because an objective standard of reasonableness under the circumstances governs whether Rule 11 has been violated, "a federal district court is required to evaluate whether the motion, pleading or other paper reflected what could reasonably have been believed by the signer at the time of signing." *Meeker*, 953 F.2d at 1331. In this circuit, three types of conduct warrant Rule 11 sanctions: "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no

reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose." *Pelletier v. Zweifel*, 921 F.2d 1465, 1514 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991). Based on the allegations in this case, all three types of sanctionable conduct may be implicated and warrant evaluation by the district court.

■ We, however, are not factfinders. Not only is this case complicated procedurally, exemplified by the district court's dismissing it three times, but also the court summarily disposed of the motions relevant to this appeal. Consequently, we have no factual findings or legal conclusions to review. Perhaps because Howes's motion for judgment on the pleadings or for partial summary judgment also was dismissed summarily, this case presents the peculiar posture of the facts and merits of the case being argued in the motions for Rule 11 sanctions and the responses thereto. Indeed, the parties attempted to argue facts to this court at oral argument.

The perplexing aspect of the case for this court is why the district court did not conduct a hearing before ruling on Howes's augmented motion for Rule 11 sanctions. Clearly, in Howes's amplified motion and Brigham's various responses, there were contradictory factual issues presented relating to the parties' conduct of this litigation. A hearing would have enabled the district court to ascertain the relevant facts for the purpose of ruling on the Rule 11 motion.

Moreover, Howes requested a hearing on his Rule 11 motion and the district judge summarily denied him that opportunity based on a local rule, which she stated prevented him from representing himself after being represented by an attorney without proper substitution. Significantly, the local rule cited by the district court *does allow* the court *"in its discretion"* to

---

**6.** This court has stated that "[a]lthough the sanctions most commonly imposed are costs and attorney's fees, the selection of the type of sanction to be imposed lies within the district court's

sound exercise of discretion. The imposition of a monetary sanction is a particularly reasonable use of a court's discretion under Rule 11." *Donaldson,* 819 F.2d at 1557 (citations omitted).

"hear a party in open court, notwithstanding the fact that he has appeared or is represented by attorney." [7] S.D.Fla.Local R. 16.D.4. (emphasis added). While this court has recognized that Rule 11 does not mandate a hearing, we envisioned that a trial or other pretrial hearing would give the district court a basis to rule on a sanctions motion. [8] *Donaldson*, 819 F.2d at 1560. In this case, no hearing has been held and sporadic, marginal discovery has been conducted to establish the asserted claims. *See id.* at 1561. The factual recitations stated by the parties in the Rule 11 motions and responses are starkly contradictory. Further, we are mindful of the leniency accorded to review of the filings of pro se parties. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam).

On the facts in this case, we conclude that the district court abused its discretion in not holding a hearing to determine whether Rule 11 sanctions were appropriate. The district court has avoided the merits of this case as well as Howes's motion for Rule 11 sanctions on procedural grounds. There has been no adjudication of the motion for sanctions complete with

factual findings or legal conclusions by the district court for us to review. Accordingly, we remand this case for an evidentiary hearing on Howes's supplemented motion for sanctions.

## III. CONCLUSION

Realizing that the "major goals of Rule 11 are to rid the courts of meritless litigation and to reduce the growing cost and burdensomeness of civil litigation," this court concluded that extensive collateral procedures prerequisite to the imposition of sanctions would be counterproductive to the purpose of the rule "to sanction lawyers who abuse the litigation process." *Donaldson*, 819 F.2d at 1559. Nevertheless, adjudication of the Rule 11 sanctions motion in this case has been circumvented procedurally for the pro se defendant-appellant, who may have been required to fund the defense of a meritless case. The evidentiary hearing that we require is not extraneous; it is necessary for an informed and reasoned decision on the Rule 11 sanctions motion at issue. Accordingly, the district court's order denying Howes's motion for Rule 11 sanctions is REVERSED,

---

7. The complete text of the local rule used by the district court to deny Howes a hearing on his Rule 11 motion provides:

> Whenever a party has appeared by attorney, he cannot thereafter appear or act in his own behalf in the action or proceeding, or take any step therein, unless an order of substitution shall first have been made by the Court, after notice to the attorney of such party, and to the opposite party; *provided, that the Court may in its discretion hear a party in open court, notwithstanding the fact that he has appeared or is represented by attorney.*
> S.D.Fla.Local R. 16.D.4. (emphasis added).

8. While notice, "from the party seeking sanctions, or from the court, or from both," and an opportunity to respond to a motion for Rule 11 sanctions comports under *Donaldson* with the due process requirements of Rule 11, we consider it prudent for a district judge to hold a hearing before imposing sanctions. *Donaldson*, 819 F.2d at 1560; *see, e.g., Threaf Properties, Ltd. v. Title Ins. Co.*, 875 F.2d 831, 834 (11th Cir.1989) (Although reversed by this court on appeal, the district court imposed Rule 11 sanctions following an evidentiary hearing because it found and documented in an order that the breach of contract claim was not supported by a

good faith argument, and that the negligence claims were not well grounded in fact.); *United States v. Milam*, 855 F.2d 739, 741 (11th Cir. 1988) (The district court held an evidentiary hearing before imposing Rule 11 sanctions on defendant-appellant and his attorney for pursuing a frivolous statute of limitations defense.)

In an appeal from Rule 11 sanctions, we have held that the district court did not abuse its discretion in failing to hold an evidentiary hearing in assessing Rule 11 attorney's fees. *Meeker*, 953 F.2d at 1335. The circumstances of that case, however, distinguish it: the "appellant did not request an evidentiary hearing and did not controvert appellee's affidavits which contained detailed information concerning the amount and type of legal services provided." *Id.* Additionally, the "ample record" in the district court allowed this court meaningful review in that the district court's assessment was readily verifiable. *Id.* Nevertheless, we emphasized that "the best practice calls for a district court to make explicit findings of fact and conclusions of law" to support any order imposing Rule 11 sanctions. *Id.* While the district judge in this case did not impose sanctions, we do not see how she was able to decide the motion on the record in this case without a hearing because of the contradictory statements in the various motions and responses.

and this case is REMANDED for an evidentiary hearing on the supplemented Rule 11 motion.