**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

---

No. 96-30777

---

DONNA THORNTON,

                                                              Plaintiff,

VERSUS

GENERAL MOTORS CORPORATION,

                                                    Defendant-Appellee,

VERSUS

BERNEY L. STRAUSS,

                                                     Movant-Appellant.

---

Appeal from the United States District Court
For the Western District of Louisiana

---

March 2, 1998

Before EMILIO M. GARZA, PARKER and DENNIS, Circuit Judges.

PER CURIAM:

    Appellant attorney, Berney L. Strauss, was sanctioned under Federal Rule of Civil Procedure 11 by the district court on its own initiative for filing a lawsuit on behalf of Donna Thornton against General Motors, Inc. for punitive damages without first having made

1

a reasonable inquiry into the facts underlying Thornton's claim. In imposing the sanctions, the district court suspended Strauss from the practice of law before the Western District of Louisiana for two years and ordered him to reimburse General Motors, Inc. its reasonable attorney's fees incurred in defending the suit. This appeal concerns only the propriety of the imposition of sanctions upon Strauss, Thornton having failed to file a timely appeal from the district court's summary judgment dismissing her complaint. We reverse and vacate the district court's sanctions order.

Federal Rule of Civil Procedure 11(c)(1)(B) requires that, when the district court itself initiates sanctions proceedings, it shall enter an order describing the specific conduct that appears to violate Rule 11(b) and directing the attorney to show cause why he has not committed a violation with respect to that specific conduct. In the present case, the district court entered a show cause order that did not describe the specific conduct for which it subsequently sanctioned Strauss. Accordingly, the district court did not, prior to imposing sanctions, afford Strauss adequate notice to afford him an opportunity to respond to charges of specifically described conduct as prescribed by Rule 11(c)(1)(B).

**Facts and Proceedings Below**

Donna Thornton, was employed by General Motors Corporation ("GMC") at its headlamp manufacturing plant in Monroe, Louisiana. Thornton worked in an area called the "BAT Room" (Base Coat/Aluminize/Top Coat Room) where headlamp housings are cleaned

and painted.  In this process the chemical n-Butyl Acetate is used as a solvent for the paint and as a wash to clean the housings.  On April 8, 1994, Thornton was hospitalized and received treatment after reporting to the GMC infirmary complaining of dizziness, nausea, vomiting, and exhibiting a skin rash.  Another GMC employee, Arlene Young, who worked near Thornton, was also hospitalized after she too broke out in a rash.  Subsequently, GMC discovered that in the area in which Thornton and Young worked a filter canister containing n-Butyl Acetate had developed a crack and was emitting fumes into the BAT room.

On February 17, 1995, Thornton met with an attorney, Berney Strauss, in New Orleans and sought legal representation in connection with her April 8, 1994 accident and resulting injuries. Strauss discussed with Thornton the events surrounding her hospitalization and reviewed documents provided by her relating to both GMC's reaction to the leak and the properties of n-Butyl Acetate.  A GMC service report verified that two employees had been admitted to the hospital for chemical exposure on April 8, and a "Material Safety Data Sheet" ("MSDS") revealed the hazardous nature of n-Butyl Acetate.  In addition, the GMC document confirmed other key components of Thornton's story -- that a crack had developed in a "solvent wash" canister and that it had resulted in the release of n-Butyl Acetate.  The report, signed by Bruce DeBruhl, GMC's senior manufacturing engineer, referred to the leak as a "safety problem."  Thornton also told Strauss that, following the accident, DeBruhl disclosed to her that her supervisors "should have"

3

detected the leak hours before they did.

On March 20, 1995, Strauss filed a complaint on Thornton's behalf in United States District Court for the Western District of Louisiana seeking punitive damages from GMC under Louisiana Civil Code article 2315.3 in connection with her accident. Article 2315.3 allowed for an award of exemplary (or punitive) damages in cases of wanton or reckless disregard for the public safety in the storage, handling, or transportation of hazardous or toxic substances. The complaint alleged that Thornton's injuries were the result of the defendant "failing to maintain" machinery, "failing to take proper precautions" to prevent toxic emissions, "failing to rectify a known hazard," and, lastly, requiring Thornton to work in an area known to be dangerous by GMC. These acts and omissions, Thornton claimed, constituted a "wanton or reckless disregard for the public safety."

Following discovery, GMC moved for summary judgment on March 14, 1996. GMC asserted that Thornton had not presented a genuine issue of material fact that her injury was based on the "wanton or reckless" conduct of the company as required by La. Civ. Code art. 2315.3 under its interpretation by the Louisiana state supreme court in *Billiot v. B.P. Oil Co.*, 645 So. 2d 604, 613 (La. 1994). On April 8, 1996, the district court granted GMC's motion for summary judgment and dismissed Thornton's claims with prejudice. In its memorandum ruling, the district court stated that Thornton, in response to the motion for summary judgment, had "failed to come forth with any evidence even remotely raising a genuine issue of

4

material fact as to whether GM stored or handled n-Butyl Acetate in a wanton or reckless manner."

Previously, on April 4, 1996, the district court, on its own initiative, had ordered Berney L. Strauss to show cause why he had not violated Federal Rule of Civil Procedure 11(b).  The district court's order and reasons stated:

> The court, pursuant to F.R.C.P. Rule 11(c)(1)(B), hereby **ORDERS** Berney L. Strauss to show cause why he has not violated subsections (b)(2) and (3) of this rule.
> Berney L. Strauss is **ORDERED**  to produce evidence that supports a claim pursuant to La. Civ. code art 2315.3 and which meets the standards set forth in <u>Billiot v. B.P. Oil Co.</u>, 645 So.2d 604 (La. 1994), for seeking punitive damages under Article 2315.3.  Mere argument by Mr. Strauss will not be sufficient.  Rule 11(b)(2) and (3) require that Mr. Strauss have a reasonable basis in fact to support a claim under Article 2315.3.  To this point, Mr. Strauss has not produced  any *evidence* which supports making a claim for $10,000,000 in punitive damages under 2315.3.  Thus, Mr. Strauss is **ORDERED** to produce evidence to show cause why he should not be sanctioned under Rule 11 (b).

After reviewing Strauss' written response, the district court, on June 21, 1996, issued an order sanctioning Strauss by suspending him from the practice of law in the Western District of Louisiana for two years and by ordering him to reimburse GMC its reasonable attorney's fees incurred in defending this suit.  The district court, however, did not quantify the amount of attorney's fees. Subsequently, and prior to a final determination as to the amount of attorney's fees owed, Strauss filed a timely appeal from the district court's order sanctioning his conduct.

5

## Jurisdiction

While neither party contests this court's jurisdiction to entertain this matter, we are obligated to satisfy ourselves that appellate jurisdiction is proper. *See Silver Star Enterprises, Inc. v. M/V Saramacca,* 19 F.3d 1008, 1013 n.5 (5th Cir. 1994). Initially, we are confident in stating that under normal circumstances a post-judgment order imposing sanctions is final and appealable. *See Didie v. Howes*, 988 F.2d 1097, 1103 (11th Cir. 1993)(noting that "a postjudgment order, which is the last order entered in an action, is final and appealable"); *Cassidy v. Cassidy*, 950 F.2d 381, 382 (7th Cir. 1991)(determining that Rule 11 sanctions awarded after judgement are separately appealable); *see also Dardar v. Lafourche Realty Co., Inc.*, 849 F.2d 955, 957 (5th Cir. 1988)(stating that an award of attorney's fees may be appealed separately as a final order following a final determination of liability on the merits). However, in this case, the district court's order imposed two separate sanctions on Strauss: one sanction suspending him from practice before the Western District effective immediately and the other a monetary sanction of unquantified attorney's fees. Normally, an unquantified award of attorney's fees does not constitute a final appealable order pursuant to 28 U.S.C. §1291. *See Southern Travel Club, Inc. v. Carnival Air Lines, Inc.,* 986 F.2d 125, 129-30 (5th Cir. 1993). However, the portion of the district court's order suspending the appellant is final and appealable.

We believe that the two sanctions ordered by the district

6

court are severable with respect to the issue of finality. *See John v. Barron*, 897 F.2d 1387, 1390 (7th Cir.)(addressing portion of Rule 11 finding as to monetary sanction but ruling that court had no jurisdiction over award of attorney's fees in which amount not fixed), *cert. denied*, 498 U.S. 821 (1990); *see also Resolution Trust Corp. v. Bright*, 6 F.3d 336, 340 n.5 (5th Cir. 1993)(addressing number of Rule 11 sanctions although order contained one sanction over which the court did not have jurisdiction and apparently was not appealed by the parties). Thus, we may consider the propriety of the court's determination that Strauss' pre-filing conduct contravened Rule 11 because at least one portion of the district court's order, i.e. the suspension sanction, is a final appealable order.

Considering the finality of at least one aspect of the district court's sanction order, both parties urge this court to exert pendant appellate jurisdiction over the normally unappealable attorney's fees liability order. *See Gilda Marx, Inc. v. Wildwood Exercise, Inc.*, 85 F.3d 675 (D.C. Cir. 1996)(recognizing the potential for pendant appellate jurisdiction over non-final attorney fee liability orders); *see also* Note, Timothy B. Smith, *Court-Created Expansion of Pendant Appellate Jurisdiction*, 65 Geo. Wash. L. Rev. 653 (1997). Pendant appellate jurisdiction is only proper in rare and unique circumstances where a final appealable order is "inextricably intertwined" with an unappealable order or where review of the unappealable order is necessary to ensure meaningful review of the appealable order. *See Woods v. Smith,* 60

7

F.3d 1161, 1166 n.29 (5th Cir. 1995); see also *Swint v. Chambers Cty. Commission,* 514 U.S. 35 (1995)(implying that pendant appellate jurisdiction is proper in very limited circumstances). In this case, the propriety of the district court's attorney's fees sanction is "inextricably intertwined" with the suspension sanction as to make pendant appellate jurisdiction appropriate over the attorney's fees sanction. Moreover, considering the result reached by the court in this matter, pendant review promotes judicial economy by providing both parties with a speedy resolution of the issues while allowing for a "sensible allocation of judicial resources." *Gilda Marx,* 85 F.3d 678-79.

## Analysis

The district court's sanctions ruling stated that it had initiated the sanctions proceeding "[d]ue to the complete absence of evidence produced by Thornton in response to GM's motion [for summary judgment]." Consistent with this reasoning, the district court's show cause order had directed Strauss "to produce evidence that supports" Thornton's claim, because "Rule 11(b)(2) and (3) require that Mr. Strauss have a reasonable basis in fact to support" the claim, and "[t]o this point, Mr. Strauss has not produced any *evidence* which supports making" the claim.

The district court's show cause order did not allege that Strauss failed to make a reasonable inquiry prior to filing suit or that this was the specific conduct that appeared to have been a violation of Rule 11(b). Instead, the district court's show cause

8

order cited Strauss for his general conduct in failing to produce evidence in support of Thornton's claim prior to the district court's ruling on GMC's motion for summary judgment. Strauss argues, with merit, that he reasonably read the court's show cause order to call upon him to produce evidence supporting Thornton's claim as of the time he opposed GMC's motion for summary judgment, not to show that he had made a reasonable inquiry before filing the initial complaint, the lack of which the court's order ultimately found was Strauss' only omission that called for sanctions.

Given the timing of the court's ruling and the lack of precision in the show cause order, we do not believe that Strauss was adequately placed on notice as to the "specific conduct" that the court ultimately found to be sanctionable. Four days before granting GMC's motion for summary judgment, the district court issued the show cause order demanding "evidence" of GMC's liability and lamented the lack of evidence that had been produced "[t]o this point." Although the court invoked subsection (b)(2) and (3) of Rule 11 and indicated that it found Thornton's claim lacked a reasonable basis in fact, these references do not sufficiently clarify what conduct Strauss needed to explain and justify in his response to the court.

As a consequence of the court's action, Strauss was misled and hampered in presenting his defense. The district court's sanctions order evaluated his pre-filing conduct according to the factors elucidated by the *en banc* court in *Thomas v. Capital Sec. Serv., Inc.,* 836 F.2d 866 (5th Cir. 1988)(*en banc*). These factors

9

include: the time available for investigation; the extent to which an attorney relied on his client for factual support; the feasibility of a pre-filing investigation; whether the attorney accepted the case from another member of the bar; the complexity of the factual and legal issues; and the extent to which the development of the factual circumstances of the claim requires discovery. *Thomas*, 836 F.2d at 875. The district court's rule to show cause, issued more than one year after the filing of suit, did not reasonably and fairly put Strauss on notice that the district court's decision to sanction him would hinge on his showing under the pre-complaint conduct factors.

Despite the show cause order's failure to notify Strauss adequately that he might be sanctioned for a pre-complaint failure to investigate rather than a failure to produce evidence in response to a motion for summary judgment, the court found that Strauss had violated Rule 11(b) by not conducting a reasonable investigation of the evidence supporting the claim prior to initially filing suit. Thus, the show cause order did not comply with Rule 11(c)(1)(B) which provides that, when a trial court itself initiates the proceedings for sanctions, it shall "enter an order describing the specific conduct that appears to violate subdivision (b)[the substantive subdivision of the Rule] and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto." *See Larsen v. City of Beloit* 130 F.3d 1278, 1286 (7th Cir. 1997); *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 150-151 (7th Cir. 1996). This

requirement imposed on district courts when acting on their own initiative under Rule 11(c)(1)(B) was intended to ensure due process. *Johnson,* 74 F.3d at 151.

We review the imposition of Rule 11 sanctions for an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405 (1990); *Thomas,* 836 F.2d at 872. In this case the notice and due process requirements for a district court's imposition of sanctions on its own initiative were not followed. Thus, the district court abused its discretion by sanctioning Strauss without giving him notice of the specific conduct for which he ultimately was suspended from practice and ordered to pay GMC's attorney's fees.

Moreover, where sanctions are imposed under Rule 11(c)(1)(B) by a district court on its own initiative, neither the award of attorney's fees nor the suspension from practice before the court constitute a valid sanction. Specifically, an award of attorney's fees is authorized only "if imposed on motion and warranted for effective deterrence." Fed. R. Civ. P. 11 (c)(2); *see Johnson,* 74 F.3d at 152 n.3. Furthermore, when a district court finds that a disciplinary sanction more severe than admonition, reprimand, or censure under Rule 11 is warranted, it should refer the matter to the appropriate disciplinary authorities. *See* Fed. R. Civ. P. 11 advisory committee notes to the 1993 Amendments. Thus, in this case, even if the notice and due process requirements of Rule 11(c)(1)(B) had been followed, the order suspending Strauss from practice and the award of attorney's fees imposed on Strauss would have been improper.

11

Therefore, it is hereby ordered that the district court's order imposing sanctions on Appellant-movant Strauss is REVERSED and VACATED.