[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12528
Non-Argument Calendar
_____

D.C. Docket No. 6:18-cv-01755-ACC-LRH

TIMOTHY HAJDASZ,

Plaintiff - Appellee,

versus

MAGIC BURGERS, LLC,

Defendant,

LAWRENCE RICHARD METSCH,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 11, 2020)

Before MARTIN, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

Attorney Lawrence Metsch appeals the district court's imposition of sanctions in connection with his client's removal of a civil lawsuit past the one-year deadline set forth in 28 U.S.C. § 1446(c)(1).[1]  We affirm.

## I. Background

The underlying litigation involves a slip-and-fall lawsuit in Florida state court against Metsch's client, Magic Burgers, filed on March 6, 2017 by Timothy Hajdasz.  The complaint asserted damages "that exceed Fifteen Thousand Dollars," but did not specify an exact amount.  Stating the damages in this manner satisfied the jurisdictional requirement in Florida state court.  On its face, however, this complaint did not satisfy the amount-in-controversy requirement for federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).[2]

---

[1] We note for clarification that Metsch does not appear to be appealing the district court's remand of his client's case to Florida state court.  Insofar as he is attempting to do so, we are without jurisdiction to review that decision.  28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal . . . ."); *see Overlook Gardens Props., LLC v. ORIX USA, L.P.*, 927 F.3d 1194, 1198 (11th Cir. 2019) (acknowledging that "the Supreme Court has repeatedly held that . . . remands based on either a defect in the removal process or a lack of jurisdiction are excluded from appellate review by § 1447(d)).  We therefore do not decide the merits of that holding.

[2] The federal diversity jurisdiction statute provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States."  28 U.S.C. § 1332(a).  Hajdasz is a New York citizen.  Magic Burgers is a business incorporated in Texas.

On March 14, 2017, Magic Burgers sent Hajdasz requests for production and a set of written interrogatories which were aimed in part at soliciting the total damage amount sought by Hajdasz.[3] Hajdasz objected to the requests for production as "overbroad, vague and ambiguous, irrelevant, inadmissible and unduly burdensome." And in response to Magic Burger's interrogatories, Hajdasz listed identifying information for specific medical providers along with certain medical expenses totaling $24,806.31, but stated that the amount owed one medical provider and the total amount of lost wages were "undetermined" at that time. Magic Burgers did not seek additional written discovery from Hajdasz or his medical providers on the damages issue and did not seek to compel Hajdasz's responses to what was served.

Ten months later, on January 11, 2018, Magic Burgers took Hajdasz's deposition and asked him a few questions regarding damages,[4] to which Hajdasz's attorney objected to form and asserted attorney-client privilege. Magic Burgers

---

[3] Specifically, Magic Burgers requested production of documents pertaining to "the amount of money which would compensate Hajdasz for the injury he sustained as the consequence of [Magic Burger's] negligence." In its interrogatories, Magic Burgers asked Hajdasz to "[l]ist each item of expense or damage, other than loss of income or earning capacity" that resulted from the injury, and to "state the nature of the income, benefits, or earning capacity" that he lost "in the past or future as a result of the incident."

[4] Metsch asked Hajdasz: (1) "How much are you asking for?"; (2) "Are you asking for compensation for your lost wages because you can't work?"; (3) "What do you think this claim is worth? What is your claim here?"

did not notice additional depositions seeking information on damages until September 2018 (see *infra*).

On June 27, 2018—nearly 16 months after the filing of the complaint—Magic Burgers finally filed a motion to compel Hajdasz to answer the deposition questions related to the damage amount. The Florida state court denied the motion and sustained Hajdasz's previous objections, but ordered a new deposition of Hajdasz on the specific subject of damages. At this new deposition on August 13, 2018, Magic Burgers asked Hajdasz the monetary amount of his "pain and suffering," "disability," "mental anguish," "loss of the capacity for the enjoyment of life," and "aggravation of previously existing condition." Hajdasz's attorney once again asserted attorney-client privilege to these questions, and Hajdasz himself responded by saying that he either "c[ouldn't] put a monetary value on it" or "d[idn't] know how to answer" and would "just leave it with a [j]ury and see what a [j]ury would award."[5] Magic Burgers also inquired about Hajdasz's "future

---

[5] Magic Burgers additionally asked Hajdasz to provide updated and exact amounts regarding the "expense of hospitalization" and "medical nursing care and treatment" related to his alleged injury, to which Hajdasz responded that all medical bills had been sent to his attorney and that he consequently did not know the amounts. Magic Burgers then inquired into Hajdasz's "loss of earnings," to which Hajdasz stated that he had "never sat down and actually figured it out," and his attorney interjected that he was unsure whether Hajdasz would be bringing a wage-loss claim at trial. Magic Burgers then asked whether Hajdasz had experienced a "loss of the ability to earn money," to which Hajdasz responded that he could not work two previous jobs because they required standing. Lastly, Magic Burgers asked for the "total amount of money . . . award" he was seeking, and Hajdasz's attorney asserted attorney-client privilege and instructed Hajdasz to not answer.

medical" expenses, to which Hajdasz admitted there had been a "discussion between [him] and Dr. Sastry [his surgeon]" on the subject, but that he did not know what type of procedure might be required and had not yet had it performed because he "c[ouldn't] afford it."

In August 2018, the parties exchanged exhibits in preparation for trial. As part of that exchange, Magic Burgers received a written medical opinion from Dr. Sastry—dated September 20, 2016 (nearly two-years old)—stating that his future medical treatment would cost $2,800 to $5,000 per year. On September 12, 2018, Magic Burgers took the deposition of Dr. Sastry.

Trial began on October 15, 2018. Magic Burgers entered no exhibits and called no witnesses.[6] At the close of evidence on October 16, Hajdasz filed a motion for partial directed verdict in which he sought damages for past medical bills in the amount of $26,434.31 *and* "future medical expenses of a minimum of $2,800.00 per year for [Hajdasz's] lifetime pursuant to the life expectancy in the mortality tables." At the time, Hajdasz was 58 years old and expected to live for another 22 years based on the mortality table submitted by Hajdasz at trial. This life expectancy meant that his future medical expenses, when using the low-end estimate by Dr. Sastry ($2,800), would be $61,600. When this figure is combined

---

[6] Having failed to submit a list of witnesses or exhibits before trial, Magic Burgers was barred by local rules from presenting evidence in either form at trial.

with his past medical expenses, the amount of damages Hajdasz requested in his motion for partial directed verdict is $88,034.31.

The following morning, on October 17, Magic Burgers removed the case to federal court on the basis of diversity jurisdiction. Upon removal, the Florida state court declared a mistrial.

The district court subsequently granted Hajdasz's motion to remand the case. The court also granted Hajdasz's motion to impose Rule 11 sanctions in the amount of $2,750 upon Metsch for removing the case after the one-year limit in violation of § 1446(c)(1).[7] Metsch timely appealed the imposition of Rule 11 sanctions.[8]

## II. Standard of Review

---

[7] Hajdasz's Rule 11 motion sought sanctions against both Metsch *and* Magic Burgers, however, the district court determined that sanctions were appropriate against Metsch alone because "it was Mr. Metsch as counsel, and not the client, who was required to know the Federal Rules of Civil Procedure and the statutes governing the procedures for removal of cases." Magic Burgers was nonetheless charged fees pursuant to 28 U.S.C. § 1447(c) for lacking an objectively reasonable basis for seeking removal.

[8] Although the district court remanded the principal case, we have jurisdiction to hear Metsch's appeal because it involves the collateral issue of sanctions under Rule 11. *Didie v. Howes*, 988 F.2d 1097, 1103 (11th Cir. 1993) ("[A] district court appropriately may impose Rule 11 sanctions in a case in which the district court subsequently is determined to have been without subject matter jurisdiction.") (citing *Willy v. Coastal Corp.*, 503 U.S. 131 (1992)); *see also Mahone v. Ray*, 326 F.3d 1176, 1180 (11th Cir. 2003) ("As both the Supreme Court and we have recognized, Rule 11 motions raise issues that are collateral to the merits of an appeal, and as such may be filed even after the court no longer has jurisdiction over the substance of the case."). Furthermore, a district court's remand to state court on the basis of an untimely filing does not necessarily imply that the case has a jurisdictional defect. *Moore v. N. Am. Sports, Inc.*, 623 F.3d 1325, 1329 (11th Cir. 2010) ("[T]he timeliness of removal is a procedural defect—not a jurisdictional one."). Thus, our review of the Rule 11 sanctions is proper.

"[A]n appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." *Smith v. Psychiatric Sol., Inc.*, 750 F.3d 1253, 1260 (11th Cir. 2014) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination or bases an award . . . upon findings of fact that are clearly erroneous." *Silva v. Pro Transport, Inc.*, 898 F.3d 1335, 1339 (11th Cir. 2018) (quoting *Mut. Servs. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1322 (11th Cir. 2004)).

## III. Analysis

An attorney who presents any "written motion" to the court "certifies" that "legal contentions" contained therein "are warranted by existing law or by a nonfrivolous argument . . . for establishing new law." Fed. R. Civ. P. 11(b). If an attorney violates Rule 11(b), the court may "impose an appropriate sanction" on that attorney. Fed. R. Civ. P. 11(c). A party moving for Rule 11 sanctions against an opposing counsel need only establish that opposing counsel filed a motion "that is based on a legal theory that has no *reasonable* chance of success." *Silva*, 898 F.3d at 1340 (emphasis added). We have stated that "Rule 11 sanctions are designed to discourage dilatory or abusive tactics and help streamline the litigation process by lessening frivolous claims or defenses." *Messengale v. Ray*, 267 F.3d

1298, 1302 (11th Cir. 2001) (quoting *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987)).  As well, "sanctions may be imposed for the purpose of deterrence, compensation and punishment."  *Id.* (quoting *Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1334 (11th Cir. 1992)).

Because Metsch's decision to remove his clients' case is the basis for the Rule 11 sanctions, we review that law here.  Any removal to federal court on the basis of diversity jurisdiction must satisfy both the substantive jurisdiction requirements of 28 U.S.C. § 1332 *and* the "procedural requirements regarding the timeliness of removal" pursuant to 28 U.S.C. § 1446.  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 756 (11th Cir. 2010).  Where the requirements for diversity jurisdiction can be derived from the face of the complaint, "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading."  28 U.S.C. § 1446(b)(1).  Where, as here, the complaint does not state facts that satisfy diversity jurisdiction, "a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  *Id.* § 1446(b)(3).  This late-removal procedure has a time limit, however, as a case that comes to satisfy the substantive requirements of federal diversity jurisdiction may not be removed "more than 1 year after the commencement of the action."  *Id.*

8

§ 1446(c)(1).  The sole exception to this one-year removal cutoff is where "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  *Id.* § 1446(c)(1).  Bad faith is shown where the district court determines that "the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal."  *Id.* § 1446(c)(3)(B).

Here, Metsch removed his client's case beyond the one-year anniversary of the filing of the complaint.  Thus, one-year bar was plainly implicated.  *Id.*. § 1446(c)(1).  Metsch argues nonetheless that his client was excepted from the one-year deadline for two reasons: (1) Hajdasz's refusal during discovery to provide a damages calculation amounted to "bad-faith"; and (2) our cautionary language in *Lowery v. Alabama Power Co.*, where we stated that, in the context of a § 1446(b)(3)-type removal, a defendant removing a case to federal court must possess a document containing an "unambiguous statement that clearly establishes federal jurisdiction."  483 F.3d 1184, 1213 n.63 (11th Cir. 2007).  For these reasons, Metsch contends he had no option but to wait until Hajdasz moved in writing for a directed verdict of more than $75,000—which just happened to occur at the end of trial—before removing the case, and thus his decision to remove the case was not frivolous.

9

The district court found that Metsch's invocation of the bad-faith exception to § 1446(c)(1) was "insupportable."[9]  We agree.[10]  The district court found that the plaintiff's discovery objections were well-taken and that there was no "bad-faith pattern" or failure to disclose the amount in controversy.  Metsch has not demonstrated that the district court abused its discretion in so ruling.

Further, as the district court noted, the delay in learning the total damage amount was squarely attributable to Metsch:

> The most telling factor in this particular case is the timeline of the discovery and the lack of any effort by Magic Burgers to take any steps whatsoever *within the one-year removal period* to compel

[9] Metsch did not mention in his notice of removal that the "bad-faith" exception of 28 U.S.C. § 1446(c)(1) applied.  Rather, the first time he mentioned the bad-faith exception was when he filed a response to Hajdasz's motion to remand.  In assessing Rule 11 sanctions against Metsch, the district court found that he "failed in the Notice of Removal to even acknowledge, no less argue an exception to, the one-year limitation for diversity cases in § 1446(c)(1)."

On appeal, Metsch argues that this finding was error.  In other words, Metsch contends—without citation to case law—that § 1446(a) does not require a removing party to mention specifically any applicable bad-faith exception to the one-year cutoff under §1446(c) in its actual notice of removal.  We can find no case addressing this issue.  And we need not reach this issue here, because Metsch failed to argue below—in neither his response in opposition to Hajdasz's motion to remand nor in his response in opposition to Hajdasz's motion for Rule 11 sanctions—that he should not be required to mention specifically the bad-faith exception in his notice of removal.  With very limited exceptions, we do not typically entertain arguments not presented in the district court.  *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004) (listing the "five circumstances" in which we have "permitted issues to be raised for the first time on appeal").  As Metsch fails to point us toward any applicable exception, we decline to address his argument that a removing party is not required to mention specifically any applicable bad-faith exception to the one-year cutoff in its notice of removal.  Furthermore, we need not resolve this issue here because Metsch does not prevail even if his notice of removal did not need to include mention of the bad-faith exception.

[10] Again, we note that this holding pertains only to the district court's imposition of Rule 11 sanctions against Metsch and not to its decision to remand the case.

10

[Hajdasz's] damages response which it now alleges [Hajdasz] "deliberately withheld to avoid removal."

*Hajdasz v. Magic Burgers, LLC*, No. 6:18-cv-01755-ACC-LRH, 2018 WL7436133, at \*8 (M.D. Fla. Dec. 10, 2018) (emphasis added).  Indeed, Magic Burgers took Hajdasz's deposition 10 months after the suit was filed, asked only a few questions at that deposition pertaining to the damage amount, and neglected to move to compel answers to those deposition questions for nearly 16 months after the complaint was filed.  And not once did Magic Burgers seek to compel responses to written discovery regarding damages.  Because of Metsch's lack of diligence, the one-year deadline passed.  His untimely attempt to remove during trial, accordingly, was arguably frivolous.  And therefore the district court did not abuse its discretion in so ruling.  *See A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 212 (3d Cir. 2014) (finding that the bad-faith exception to the one-year limit applies only where a defendant can demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))).

Lastly, Metsch argues that he did not remove until after the one-year deadline because he was "constrained" by our warning in *Lowery* that a removing defendant must possess a document containing an unambiguous statement establishing federal diversity jurisdiction.  *See Lowery*, 483 F.3d at 1213 n.63.  To

be sure, *Lowery* justifies a defendant's caution in removing a diversity case based on something other than incomplete information contained in a sparse initial pleading.  But *Lowery* cannot be used as an excuse for failing to put forth a diligent effort in ascertaining the amount of damages sought in advance of the statutory deadlines.  Tellingly, the "unambiguous statement" Metsch ultimately relied on to remove the case—Hajdasz's $2,800 per year future medical expenses—derived from Dr. Sastry's September 2016 medical report, and thus was obtainable well before the March 7, 2018 one-year deadline for removal.

Accordingly, we **AFFIRM** the district court's imposition of Rule 11 sanctions and **DENY** Hajdasz's motion for Appellate Attorney's Fees.[11]

---

[11] Hajdasz motioned this Court to impose sanctions on Metsch pursuant to Rule 38 of the Federal Rules of Appellate Procedure.  We exercise our discretion and DENY that motion.