*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0256p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

No. 09-2117
PT PUKUAFU INDAH; PT TANJUNG SERA
PUNG; LEONARD L.J. YOUNG; PT LEBONG
TANDAI; GIDEON MINERALS U.S.A., INC.,
　　　　　　　*Plaintiffs-Appellants,*

　　v.

UNITED STATES SECURITIES AND EXCHANGE
COMMISSION; MARY L. SCHAPIRO; EXPORT
IMPORT BANK OF THE UNITED STATES; JAMES
H. LAMBRIGHT; JPMORGAN CHASE & CO.;
GOLDMAN SACHS GROUP, INC.;
PRICEWATERHOUSECOOPERS, L.L.C.; JAMES
NELSON LANE; NEW CANAAN SOCIETY,
　　　　　　　*Defendants,*

NEWMONT MINING CORP.,
　　　　　　　*Defendant-Appellee.*


Nos. 09-2570; 10-1477/1837
PT PUKUAFU INDAH; PT TANJUNG SERA
PUNG; LEONARD L.J. YOUNG; PT LEBONG
TANDAI; GIDEON MINERALS U.S.A., INC.,
　　　　　　　*Plaintiffs-Appellants,*

　　v.

UNITED STATES SECURITIES AND EXCHANGE
COMMISSION; PRICEWATERHOUSECOOPERS,
L.L.C.; JAMES NELSON LANE; NEWMONT
MINING CORP.; NEW CANAAN SOCIETY;
DEVONWOOD CAPITAL PARTNERS, LLC;
GOLDMAN SACHS GROUP, INC.; MARY L.
SCHAPIRO; EXPORT IMPORT BANK OF THE
UNITED STATES; JAMES H. LAMBRIGHT;
JPMORGAN CHASE & CO.,
　　　　　　　*Defendants-Appellees.*

Nos. 09-2117/2570;
10-1477/1837

1

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 09-10943—Patrick J. Duggan, District Judge.

Argued:  March 2, 2011

Decided and Filed:  September 6, 2011

Before:  MOORE, COLE, and ROGERS, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Steven W. Reifman, REIFMAN & GLASS, Southfield, Michigan, for
Appellants.  Mark Wielga, TEMKIN WIELGA & HARDT LLP, Denver, Colorado,
Jeffrey G. Raphelson, BODMAN LLP, Detroit, Michigan, Michael J. Dell, KRAMER
LEVIN NAFTALIS & FRANKEL LLP, New York, New York, for Appellees.
**ON BRIEF:**  Steven W. Reifman, REIFMAN & GLASS, Southfield, Michigan, for
Appellants.  Mark Wielga, Radcliffe Dann IV, TEMKIN WIELGA & HARDT LLP,
Denver, Colorado, Jeffrey G. Raphelson, BODMAN LLP, Detroit, Michigan, Thomas
J. Tallerico, BODMAN LLP, Troy, Michigan, Michael J. Dell, KRAMER LEVIN
NAFTALIS & FRANKEL LLP, New York, New York, Kenneth L. Shaitelman,
ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, Todd R. Mendel,
BARRIS, SOTT, DENN & DRIKER PLLC, Detroit, Michigan, Diana Lee Khachaturian,
DICKINSON WRIGHT, Detroit, Michigan, Frederick R. Juckniess, MILLER,
CANFIELD, PADDOCK & STONE, P.L.C., Ann Arbor, Michigan, for Appellees.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.  The plaintiffs in this case believe
that they have an ownership interest in several mines in Indonesia.  In pursuit of these
interests, they have filed several lawsuits against the Newmont Mining Corporation
("Newmont") and others in both state and federal courts in the past ten years.  Each of
these lawsuits was found to be completely lacking in merit, however, and sanctions were
imposed on the plaintiffs in two of these prior lawsuits.  The present appeals are from
a lawsuit that plaintiffs filed against Newmont and other entities on March 13, 2009.
The district court dismissed all claims against all of the defendants under Federal Rule

of Civil Procedure 12(b). Nonetheless, the plaintiffs filed several motions for reconsideration and relief from judgment, every one of which was denied. Eventually, Newmont filed a motion for sanctions under Rule 11, which the district court granted. The district court ordered that the plaintiffs and their counsel, Steven W. Reifman, pay over $100,000 to Newmont for its attorney fees and costs in defending against the entire lawsuit, and the court enjoined the plaintiffs and Reifman from ever filing another lawsuit arising out of the subject matter of this case in any state or federal court. The plaintiffs now appeal.

For the reasons that follow, we **AFFIRM** the dismissal of all claims against all defendants by the district court, along with the district court's denial of the plaintiffs' motion for reconsideration. With respect to the imposition of sanctions, we hold that the district court erred in its finding of a Rule 11 violation; we therefore **REVERSE** the district court's sanctions holding, **VACATE** the order of monetary and injunctive sanctions, and **REMAND** this case to the district court to consider Newmont's motion for Rule 11 sanctions anew in light of this opinion.

## I. FACTS AND PROCEDURAL HISTORY

The plaintiffs in this case are PT Pukuafu Indah, PT Lebong Tandai, PT Tanjung Sera Pung, Gideon Minerals U.S.A., Inc., and Dr. Leonard L.J. Young (collectively, "plaintiffs"). They filed this suit on March 13, 2009 against the Securities and Exchange Commission and its Chair, Mary L. Schapiro (together, "SEC"); the Export-Import Bank of the United States and its Chair, Fred P. Hochberg (together, "ExIm Bank"); and JPMorgan Chase & Co., alleging that the SEC and ExIm Bank failed to take enforcement actions against Newmont in connection with allegedly false filings made by Newmont with the SEC, and that JPMorgan "convert[ed]" a $400 million loan from ExIm Bank. R.2 (Complaint ¶ 6 at 3). The plaintiffs also sought a temporary restraining order, but this request was denied by the district court.

On May 4, 2009, the plaintiffs filed an Amended Complaint, in which they added Newmont Mining Corp., Goldman Sachs Group, Inc., and PricewaterhouseCoopers,

L.L.C. as defendants. In addition to restating the claim made in the original complaint, the plaintiffs added five new counts—Counts Two through Six. In Count Two, the plaintiffs sought relief against the SEC and the ExIm Bank under the Administrative Procedure Act. In Count Three, the plaintiffs alleged "conversion pursuant to the Uniform Commercial Code Section 3-420." R.11 (Amended Complaint ¶ 22 at 10). In Count Four, the plaintiffs complain that Newmont "created an artifice to convert [certain Indonesian mineral assets] . . . and to defraud the general and investing public." *Id.* ¶ 27 at 11–12. In Count Five, the plaintiffs complain of "theft of Plaintiffs' financial identity" and a deprivation of their right to due process under the Fifth Amendment. *Id.* ¶¶ 29–30 at 12–13. Lastly, in Count Six, the plaintiffs allege that Goldman Sachs committed fraud and conspiracy.

Eight days later, on May 12, 2009, the plaintiffs filed a Second Amended Complaint, in which they added Devonwood Capital Partners, L.L.C.; Devonwood's CEO, James Nelson Lane; and the New Canaan Society as defendants. To the six counts already alleged, they added two more: a second Count Six, claiming "investment advising and securities fraud" against Lane, and Count Seven, claiming that Devonwood, Lane, and the New Canaan Society violated the Investment Advisers Act of 1940 and other securities laws. R.13 (Second Amended Complaint ¶¶ 38–42 at 15–17). The plaintiffs then moved for summary judgment on May 24, 2009. In response, Newmont filed a motion to dismiss the Second Amended Complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), on June 10, 2009. JPMorgan followed with its own motion to dismiss, under Rule 12(b)(6), as did the SEC and ExIm Bank; Goldman Sachs; Lane, Devonwood, and the New Canaan Society; and PricewaterhouseCoopers.

On July 15, 2009, the district court granted Newmont's motion to dismiss on the ground that the court lacked personal jurisdiction over Newmont, and the court also denied the plaintiffs' motion for summary judgment. R. 61 (Opinion and Order ("Op.") July 15, 2009). Four days later, the plaintiffs filed a motion for leave to amend their complaint again, this time to file a Third Amended Complaint. The proposed Third

Amended Complaint makes additional assertions regarding the subject-matter jurisdiction of the court, but it says nothing new about personal jurisdiction over Newmont. The plaintiffs also filed a motion for reconsideration of the dismissal of Newmont, followed by an emergency motion for a preliminary injunction against the SEC and PricewaterhouseCoopers, both of which were denied.

In response to the manner in which the plaintiffs and Reifman have pursued this litigation (and similar litigation in other courts in the past), Newmont filed a motion for Rule 11 sanctions on August 21, 2009. In this motion, Newmont argued that the attempted filing of the Third Amended Complaint constituted sanctionable conduct, and Newmont sought attorney fees in defending against the entire case from the beginning of the suit. Rather than respond to this motion directly, however, the plaintiffs filed an "emergency motion for reconsideration" of the denial of their emergency motion for a preliminary injunction. The district court denied the plaintiffs' motion.

On October 6, 2009, the district court dismissed the remainder of the case. It granted the remaining defendants' motions to dismiss, denied the plaintiffs' motion for leave to file a Third Amended Complaint, and entered judgment in favor of the defendants. R. 100 (Op. Oct. 6, 2009). The district court granted Newmont's motion for sanctions on November 4, 2009, and ordered "that monetary sanctions in the form of compensation for Newmont's reasonable attorneys' fees and costs will be imposed against counsel and Plaintiffs upon Newmont's submission of adequate proofs establishing those fees and costs." R.102 (Op. Nov. 4, 2009 at 13). The district court also ordered "that Plaintiffs are enjoined from filing any lawsuits against Defendants in this or any federal or state court related to the subject matter of this lawsuit." *Id.* at 13–14. Subsequently, Newmont produced a bill of costs, showing that it "has incurred $107,369.53 in attorneys' fees, costs and expenses in defending against this lawsuit." R.103 (Bill of Costs at 1). On January 19, 2010, the district court ordered that this full amount be paid by "Plaintiffs and Plaintiffs' counsel, Reifman & Glass, P.C. and Steven W. Reifman," within thirty days. R.111 (Op. Jan. 19, 2010 at 3).

Shortly after the district court ordered these sanctions, the plaintiffs filed another motion—a motion for relief from judgment, focused on the district court's sanctions orders. The district court denied this motion. Additionally, because neither the plaintiffs nor Reifman had paid the $107,369.53 within thirty days, Newmont moved for a judgment on the monetary award. On April 26, 2010, the district court entered a judgment against the plaintiffs and Reifman in the amount of $107,369.53.

## II. ANALYSIS

The plaintiffs have filed four Notices of Appeal in this case from numerous different orders of the district court, but we have consolidated the appeals together and the parties have briefed the consolidated appeal in two groups. First, in Nos. 09-2117/09-2570, the plaintiffs challenge the district court's orders (1) granting Newmont's motion to dismiss, (2) denying the plaintiffs' motion for reconsideration in light of their proposed Third Amended Complaint, (3) granting sanctions, and (4) granting the remaining defendants' motions to dismiss. Second, in Nos. 10-1477/10-1837, the plaintiffs challenge the district court's order denying the plaintiffs' motion for relief from the sanctions orders, and the district court's separate sanctions judgment. For the reasons that follow, we affirm the district court's dismissal of the case, but we reverse its holding that Rule 11 was violated and its subsequent order of sanctions.

### A. Nos. 09-2117/09-2570: Dismissal and the Grant of Sanctions

#### 1. The Dismissal of the Claims Against Newmont

The district court dismissed the plaintiffs' claims against Newmont on the ground that the court lacked both general and specific personal jurisdiction over Newmont. We review de novo a dismissal for lack of personal jurisdiction. *Intera Corp. v. Henderson*, 428 F.3d 605, 614 (6th Cir. 2005).

To comply with due process, a court's exercise of its power over an out-of-state defendant must "not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311

U.S. 457, 463 (1940)). This requires that the defendant be shown to have "minimum contacts" with the forum state, *id.*, ensuring that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The exercise of jurisdiction must also be permitted by the state's long-arm statute. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).[1] Finally, personal jurisdiction can exist in two forms: specific jurisdiction and general jurisdiction. "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, — U.S. ——, 131 S. Ct. 2846, 2851 (2011) (internal quotation marks omitted).

"The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Where the district court has not held an evidentiary hearing on the issue, however, "the plaintiff need only make a prima facie showing of jurisdiction. In this situation, we will not consider facts proffered by the defendant that conflict with those offered by the plaintiff, and will construe the facts in a light most favorable to the nonmoving party." *Id.* (internal citations and quotation marks omitted).

Before the district court, the plaintiffs alleged that Newmont had the following contacts with Michigan: that (1) Newmont Oil is a registered subsidiary of Newmont in the State of Michigan, (2) Newmont Indonesia Limited did "major, substantial business with Ford Motor Company," a Michigan corporation, (3) Newmont's sale of stock to members of the general public included individuals in Michigan, (4) Newmont made contacts with the State of Michigan by attempting to resolve this dispute, and

---

[1] Michigan's long-arm statute provides, in relevant part, as follows:
The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
(1) The transaction of any business within the state. . . .
MICH. COMP. LAWS § 600.705.

(5) Newmont also made contacts with the State of Michigan by sending "significant and important documents" to the plaintiffs in Michigan. R. 61 (Op. at 5). The plaintiffs also argued that personal jurisdiction over Newmont was established under § 27 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78aa, by this section's provision of nationwide service of process.[2]

The district court first rejected the notion that the contacts by Newmont with Michigan alleged by the plaintiffs were sufficient to constitute "continuous and systematic" activities within the State of Michigan such that general jurisdiction was established. R. 61 (Op. at 5–6). The court then held that these contacts also were insufficient to establish specific jurisdiction. In the court's view, the allegations regarding Newmont Oil, Newmont Indonesia Limited, and Newmont's dispute-resolution activities were not related to the plaintiffs' claims. The district court found the third jurisdictional allegation, regarding Newmont's sale of stock, also insufficient because no authority supported the proposition that personal jurisdiction may be established merely as a result of a purchase of stock on a public exchange by a resident of the forum state, and, in fact, several courts have held the opposite. With respect to Newmont Oil and Newmont Indonesia's alleged activities, the plaintiffs asserted personal jurisdiction under the theory that these subsidiaries acted as the alter-ego of Newmont. The alter-ego theory provides for personal jurisdiction "if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Id.* at 7 (quoting *Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008)). In the view of the district court, however, the plaintiffs "set forth no facts to support the application of this theory of jurisdiction with respect to Newmont." *Id.*

---

[2]Section 78aa of Title 15 provides, in relevant part, as follows:
Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.
15 U.S.C. § 78aa.

The district court found that "Newmont present[ed] uncontroverted evidence that Newmont Oil has not been its subsidiary since 1988, when it was sold. Further, Newmont Oil withdrew its Michigan registration in 1990." *Id.* (citation omitted). The district court also rejected the allegation of "major, substantial business" between Newmont Indonesia Limited and Ford Motor Company. According to the district court, Newmont Indonesia Limited only "guaranteed an obligation payable by Australia Magnesium Corporation to Ford Motor Company. In other words, Newmont Indonesia conducted business with a company (presumably located in Australia, not Michigan) that in turn conducted business with a Michigan company." *Id.* at 8.

The district court held that Newmont's dispute-resolution activities do not constitute the type of "purposeful availment" of a forum state that results in personal jurisdiction. *Id.* Finally, the district court rejected the plaintiffs' argument that personal jurisdiction over Newmont was established under the nationwide-service-of-process provision in the 1934 Act. According to the district court, although the plaintiffs alleged that Newmont had filed materially false financial statements in violation of the 1934 Act, *see* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10.b-5, the plaintiffs had not alleged that they had purchased or sold any Newmont securities—a necessary prerequisite to bringing a private action of this type. *Id.* at 10 (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) (holding that only purchasers and sellers of a security have a private right of action under Section 10(b) and Rule 10b-5)). Consequently, the district court concluded that the plaintiffs' securities-fraud claim did not support the exercise of personal jurisdiction over Newmont.

The plaintiffs make two basic arguments in response to the district court's holding. First, they point to the same contacts by Newmont that they presented to the district court, except for the fourth and fifth (which related to Newmont's dispute-resolution activities), and they claim that these are sufficient "minimum contacts" by Newmont to fall within Michigan's long-arm statute. Second, the plaintiffs cite several cases for the proposition that, under the Securities and Exchange Act of 1934, Newmont needed to have only "minimum contacts with the United States as a whole, rather than

with a particular state, in order for a federal court to exercise personal jurisdiction consistent with the due process clause." Pl. Br. in No. 09-2117 at xxv–xxvi. We see no merit in either of these arguments.

With respect to the nationwide-service-of-process provision of the 1934 Act, the district court was correct in holding that the plaintiffs have failed to state a claim that Newmont filed materially false financial statements in violation of the 1934 Act. *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10.b-5. The plaintiffs have not alleged that any of Newmont's allegedly false statements were "in connection with" the sale or purchase of any of its securities, and there is no evidence that the plaintiffs themselves purchased or sold any Newmont securities. *See Blue Chip Stamps*, 421 U.S. at 749. Under these circumstances, the 1934 Act does not establish a basis for finding personal jurisdiction over Newmont.

The district court correctly rejected the plaintiffs' arguments that Newmont Oil is a registered subsidiary of Newmont in the State of Michigan, that Newmont Indonesia Limited had substantial contacts with Ford Motor Company, and that Newmont's sale of stock to the general public included individuals in Michigan. First, although Newmont Oil formerly was a registered subsidiary of Newmont in Michigan, Newmont Oil was sold by Newmont in 1988 and Newmont Oil withdrew its Michigan registration in 1990. Thus, Newmont Oil's former Michigan registration does not suffice to establish personal jurisdiction over Newmont in this action that does not relate to Newmont Oil's past period of registration. Second, Newmont Indonesia Limited's contacts with a Michigan corporation, the Ford Motor Company, were insufficient to meet § 600.705's terms. As the district court pointed out, Newmont Indonesia Limited's activities[3] amounted only to conducting business with a non-Michigan company (the Australian Magnesium Corporation) that, in turn, did business with the Ford Motor Company, which does not constitute "[t]he transaction of any business within the state." MICH. COMP. LAWS § 600.705(1).

---

[3]Newmont points out that it was actually Newmont Australia Limited that guaranteed an obligation payable by the Australian Magnesium Corporation, not Newmont Indonesia Limited.

Finally, the fact that Newmont's sale of stock to the general public may have included sales to individuals within Michigan does not support specific or general jurisdiction.[4] With respect to specific jurisdiction, although the sale of stock to an individual in Michigan may, in theory, constitute "[t]he transaction of any business within the state," § 600.705(1) grants only "limited" personal jurisdiction as a result of such a transaction; jurisdiction is granted "to enable the court to render personal judgments against the individual or his representative *arising out of* [the transaction of business within Michigan]." MICH. COMP. LAWS § 600.705 (emphasis added). Here, the plaintiffs' only claim that "aris[es] out of" this transaction of business is its claim for securities fraud in violation of Section 10(b) and Rule 10b-5, but as mentioned above, the plaintiffs have not alleged that they ever purchased any of these securities in Michigan. Furthermore, with respect to general jurisdiction, we agree with the district court that there appears to be no authority for the proposition that a sale of stock to the general public that includes residents of the forum state constitutes "continuous and systematic" contact with that state sufficient to confer general personal jurisdiction; instead, there is authority for the exact opposite conclusion. *See Sheldon v. Khanal*, 605 F. Supp. 2d 1179, 1185 (D. Kan. 2008) (rejecting the notion "that the sale of shares of stock through a public exchange supports the exercise of general jurisdiction"); *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 425–26 (E.D. Pa. 2005) ("The sale of shares of World Fuel Corp. stock to the national public through the NYSE does not constitute continuous and systematic contacts with Pennsylvania and is not sufficient to establish general personal jurisdiction over Corp. in Pennsylvania."); *see also Young v. Actions Semiconductor Co.*, 386 F. App'x 623, 626 (9th Cir. 2010) (unpublished memorandum opinion) ("[A] foreign corporation's sale of stock in the forum is insufficient by itself to create general jurisdiction."). As Newmont states, "Appellants' argument, if accepted, would subject nearly every public company to [personal] jurisdiction in all 50 states." Newmont Br. in No. 09-2117 at 14.

---

[4] The plaintiffs did not inform the district court of the precise manner or forum in which the stock was sold to the general public.

In addition, even if Newmont Oil and Newmont Indonesia Limited did have contact with the State of Michigan, the district court correctly rejected the applicability of the alter-ego theory. The plaintiffs have not alleged that Newmont "exerts so much control over" Newmont Oil or Newmont Indonesia Limited that Newmont and either of the other companies "do not exist as separate entities but are one and the same for purposes of jurisdiction." *Thomson*, 545 F.3d at 362.

We therefore affirm the district court's dismissal of the claims against Newmont pursuant to Rule 12(b)(2).

### 2. The Denial of the Plaintiffs' Motion for Reconsideration

The plaintiffs next argue that "[t]he District Court erred in granting the motion for dismissal by Defendant Newmont Mining and den[ying] Plaintiffs' Motion for Reconsideration, after Plaintiffs had filed a Motion for Leave to File their Third Amended Complaint, and such proposed Third Amended Complaint was attached as an exhibit to Plaintiffs' Motion for Reconsideration of the dismissal of Defendant Newmont Mining Corporation." Pl. Br. in No. 09-2117 at xxix. The plaintiffs appear to argue that the proposed Third Amended Complaint would have cured the lack of personal jurisdiction over Newmont.

As an initial matter, the district court's grant of Newmont's motion to dismiss was not improper in light of the Third Amended Complaint because the motion for leave to file a Third Amended Complaint was not filed until four days *after* the district court's order. *Compare* R.61 (Op. July 15, 2009) *with* R. 64 (Motion for Leave July 19, 2009). The district court therefore cannot be said to have erred by not taking note of a document that had not yet been filed. Instead, the plaintiffs' argument can relate only to the denial of its motion for reconsideration.

We review for an abuse of discretion a district court's denial of a motion for reconsideration, except when the underlying ruling involves the grant of summary judgment. *Gage Prods. Co. v. Henkel Corp.*, 393 F.3d 629, 637 (6th Cir. 2004). A

motion for reconsideration is governed by the local rules in the Eastern District of Michigan, which provide that the movant must show both that there is a palpable defect in the opinion and that correcting the defect will result in a different disposition of the case. E.D. Mich. Local Rule 7.1(g).[5] The local rule also specifically states that merely presenting the same issues that the court previously ruled on is not an acceptable ground for reconsideration. The district court in this case denied reconsideration on the ground that the plaintiffs did "not identify any facts that the Court overlooked in analyzing Newmont's contacts with the forum, nor do they identify any errors in the Court's legal analysis." R.77 (Op. July 31, 2009 at 2).

The district court did not abuse its discretion in denying reconsideration. On appeal, just as before the district court, the plaintiffs have failed to identify any facts that the district court overlooked in holding that personal jurisdiction over Newmont was lacking. The plaintiffs merely point to the proffered Third Amended Complaint, which, they say, "bears on jurisdiction, as some of the basis [*sic*] for jurisdiction were amplified and clarified in that proposed complaint." Pl. Br. in No. 09-2117 at xxix–xxx. This argument has not been developed at all, and we consider it therefore waived. *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (quotation marks omitted). In addition, the proposed Third Amended Complaint provides no basis for personal jurisdiction over Newmont, because it provides no allegations of any additional contacts of Newmont with the State of Michigan.[6] Therefore, we affirm the district court's denial of the plaintiffs' motion for reconsideration.

---

[5]This provision is currently contained in Local Rule 7.1(h).

[6]We generally review for abuse of discretion the denial of a motion for leave to amend the complaint, but we review de novo a district court's determination that amendment would be futile. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003). The difference between these two standards does not matter here, however, because we reach the same result under either standard.

### 3. The Dismissal of the Claims Against the Remaining Defendants

The plaintiffs' last argument in Nos. 09-2117/09-2570 is as follows:

> The court's grant of dismissal as to the remaining Defendants is reversible error since the District Court relied upon a series of court cases in which there had never been rulings on the merits, nor were several of the parties herein parties therein, nor were other facts and legal premises relied upon by the District Court of such probative or legal precedence to justify such dismissal and a judgment in favor of Defendants.

Pl. Br. in No. 09-2117 at xxxi. It is not clear what "series of court cases" the plaintiffs are referring to. Nor can we glean from this passage what "other facts and legal premises" the plaintiffs are thinking of. The defendants therefore suggest—and we agree—that this argument is too poorly developed to warrant consideration by this court. *See Dillery*, 398 F.3d at 569. Therefore we affirm the district court's dismissal of the claims against the remaining defendants.

### 4. The Order Granting Sanctions

The plaintiffs also challenge the district court's order of sanctions. Their argument is as follows:

> The court's grant of sanctions, including what amounts to rulings on the merits and remedies outside the scope of the claimed infractions, is reversible error because the court had not granted the request for filing Plaintiffs Third Amended Complaint and the Defendant Newmont sought sanctions when it had no obligation to answer or respond to Plaintiffs request.

Pl. Br. in No. 09-2117 at xxx. They make very similar arguments in appeal Nos. 10-1477/10-1837, however, and given the lack of development of the argument here, we will consider the propriety of the sanctions order in appeal Nos. 10-1477/10-1837. *See* Part II.B. *infra*.

## 5. Conclusion

For all these reasons, we affirm the district court's dismissal of all claims against Newmont and the other defendants, R.61 (Op.), R. 99 (Op. Oct. 6, 2009), as well as the district court's denial of the plaintiffs' motion for reconsideration, R.77 (Op. at 2).[7]

## B. Nos. 10-1477/10-1837:  Motion for Relief and the Separate Sanctions Judgment

In Nos. 10-1477/10-1837, the plaintiffs challenge the district court's order denying the plaintiffs' motion for relief from the sanctions orders, and the district court's separate sanctions judgment.  The plaintiffs' first argument is that the district court erred in finding a Rule 11 violation based on conduct that was not specifically identified in Newmont's motion for sanctions.  We see merit in this argument.

We ordinarily review an order imposing sanctions under Rule 11 for abuse of discretion.  *B&H Medical, L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 269 (6th Cir. 2008).  In their motion for relief from judgment before the district court, however, the plaintiffs did not make the argument that the sanctions order was based on conduct that was not identified in Newmont's motion for sanctions.  *See* R. 112 (Motion for Relief). As a result, we review this claim only for plain error.  *United States v. Graham*, 622 F.3d 445, 455 & n.9 (6th Cir. 2010).  "To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact

---

[7]In their reply brief, the plaintiffs make an argument regarding their need for discovery on the issue of personal jurisdiction—a request made to and denied by the district court. R. 81 (Op. Aug. 3, 2009). The plaintiffs fail to preserve this argument, because they did not adequately raise this argument in their opening brief, preventing the defendants from discussing the issue in their briefs in opposition. Furthermore, even if the argument were preserved, the district court did not err in denying the plaintiffs' motion to obtain further discovery. "The Sixth Circuit generally applies the abuse of discretion standard to the district court's decision to deny discovery whether such request was made on a motion or by a Rule 56(f) affidavit." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004) (holding that "[i]t is not an abuse of discretion for the district court to deny the discovery request when the party makes only general and conclusory statements [in its affidavit] regarding the need for more discovery") (internal quotation marks omitted; second alteration in original). The plaintiffs' motion was made on July 29, 2009, *after* the district court had dismissed the plaintiffs' claims against Newmont for lack of personal jurisdiction; the plaintiffs made no such discovery request before the district court's order. Moreover, the request was too vague to permit a discovery order; with respect to personal jurisdiction, the plaintiffs stated simply that they "wish[ed] to take discovery as to jurisdictional issues." R.72 (Motion for Discovery). The district court therefore did not abuse its discretion in denying the plaintiffs' motion for discovery.

seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Id.* (quotation marks omitted).

Federal Rule of Civil Procedure 11(b) sets certain requirements for representations to the court, including that "[b]y presenting to the court a pleading, written motion, or other paper," "an attorney or unrepresented party certifies that" he or she has undertaken "an inquiry reasonable under the circumstances" to ensure that (1) "it is not being presented for any improper purpose"; (2) "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; (3) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"; and (4) "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." FED. R. CIV. P. 11(b)(1)–(4). A district court may impose sanctions on an attorney who violates these requirements either on motion by an opposing party or sua sponte. FED. R. CIV. P. 11(c)(2), (c)(3).

The identification of the specific conduct that is allegedly sanctionable is critical to a finding of a Rule 11 violation. Where a motion for sanctions is made, it "must describe the specific conduct that allegedly violates Rule 11(b)." FED. R. CIV. P. 11(c)(2). Similarly, where a court acts sua sponte, it must first issue a show-cause order requiring the alleged violator "to show cause why conduct specifically described in the order has not violated Rule 11(b)." FED. R. CIV. P. 11(c)(3). Furthermore, a district court may not impose a sanction until the violator has had "notice and a reasonable opportunity to respond." FED. R. CIV. P. 11(c)(1).

In its motion, Newmont identified the plaintiffs' attempted filing of the Third Amended Complaint as the specific conduct that constituted a Rule 11 violation. The district court agreed with Newmont and found that the motion seeking leave to file the Third Amended Complaint was "not 'warranted by existing law' or the facts alleged"

and that the proposed Third Amended Complaint "appear[s] to have been presented only for the improper purpose of harassing Newmont, causing unnecessary delay in these proceedings, and needlessly increasing the cost of this litigation." R.102 (Op. at 6). After this, however, the district court also stated that it

> believes that Plaintiffs failed to conduct a reasonable inquiry before filing *their lawsuit* to ensure that their factual allegations and the law supported this Court's personal jurisdiction over Newmont. Therefore, the Court finds that Newmont is entitled to the reasonable attorneys' fees and costs and expenses it incurred in defending against the lawsuit.

*Id.* at 6–7 (emphasis added). The district court therefore entered an injunction prohibiting the plaintiffs and Reifman "from filing any lawsuits against Defendants in this or any federal or state court related to the subject matter of this lawsuit," R.102 (Op. at 13–14),[8] and it ordered, after Newmont provided a bill of costs, that the plaintiffs and Reifman pay $107,369.53 for Newmont's attorney fees, costs, and expenses in defending against the entire lawsuit, R.111 (Op. Jan. 19, 2010 at 3).

The plaintiffs complain that "the trial [court] broadened the sanctions arena to the entire period of the litigation from the beginning of the case," rather than the filing of the motion for leave to file the Third Amended Complaint, and that the sanctions included "an extensive monetary award for actions that were not part of the specified alleged Rule 11 violations that were the subject of the motion for sanctions." Pl. Br. in Nos. 10-1477/10-1837 at 10, 17. Newmont responds that the district court's Rule 11 order was entirely correct because, although the motion seeking leave to file the Third Amended Complaint was the specific conduct identified as a violation of Rule 11 in the motion for sanctions, the motion requests relief in the form of attorney fees for the entire case. This, according to Newmont, was sufficient to permit the district court to order the

---

[8] Of great significance, the district court believed that the reasoning that supported granting an injunction prohibiting future filings against Newmont applies equally to the other defendants. As a result, despite the fact that only Newmont had filed a motion for sanctions, the district court "believe[d] that Newmont's requested injunction should extend to all of the defendants, not only Newmont." R. 102 (Op. at 12).

plaintiffs and Reifman to pay Newmont's costs and attorney fees in defending against the entire case.

We agree with the plaintiffs. The district court did not comply with Rule 11 because it found a Rule 11 violation in conduct that went beyond the specific conduct identified in Newmont's motion for sanctions. Although the district court clearly found that the motion requesting leave to file the Third Amended Complaint violated Rule 11(b)(1) and (2), the court also made a finding that indicates that it believed that the plaintiffs additionally violated Rule 11(b)'s basic requirement that an attorney must base his "knowledge, information, and belief" regarding the propriety of a submission to the court on "an inquiry reasonable under the circumstances." *See* R.102 (Op. at 6–7) ("Plaintiffs failed to conduct a reasonable inquiry before filing their lawsuit to ensure that their factual allegations and the law supported this Court's personal jurisdiction over Newmont. Therefore, the Court finds that Newmont is entitled to the reasonable attorneys' fees and costs and expenses it incurred in defending against the lawsuit."). Indeed, the monetary sanctions appear to be directly tied to *this* finding—that Reifman did not meet Rule 11(b)'s requirement to make "an inquiry reasonable under the circumstances"—not the finding that the Third Amended Complaint violated Rule 11.[9]

The fact that the district court's finding of a Rule 11 violation includes conduct that goes beyond the conduct identified by Newmont in its motion for sanctions is

---

[9]We recognize that there may be an alternative way to view the district court's opinion. The district court's opinion may be read to show that the district court believed that only the motion for leave to file the Third Amended Complaint constituted the Rule 11 violation, as alleged in Newmont's motion for sanctions, and that the court's subsequent statement that the plaintiffs and Reifman "failed to conduct a reasonable inquiry before filing their lawsuit" was not intended to constitute a finding of a Rule 11 violation. New questions arise under this view, however, including whether attorney fees may be awarded under Rule 11 for work that was not directly related to sanctionable conduct—here, the Third Amended Complaint. *Compare Giganti v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 314 (E.D. Va. 2004) (holding that Rule 11 does not permit an opposing party to receive attorney fees for fees that were not incurred in responding to the sanctionable conduct) *with Kendrick v. Zanides*, 609 F. Supp. 1162, 1173 (N.D. Cal. 1985) (holding that an opposing party may receive attorney fees under Rule 11 for fees that were not incurred in responding to the sanctionable conduct). Also raised would be important questions over the propriety of prohibiting future lawsuits against defendants other than Newmont, who did not seek sanctions, *supra* note 8, and the propriety of a federal court's prohibiting future filings in state court. Because of the district court's stated belief that the plaintiffs and Reifman "failed to conduct a reasonable inquiry before filing their lawsuit," however, we need not address these significant issues. Instead, we proceed based on the district court's determination that the filing of the initial suit—not simply the filing of the motion for leave to file the Third Amended Complaint—was also a violation of Rule 11.

especially problematic given that Rule 11 is particularly focused on ensuring that the alleged violator has notice of the specific conduct that is said to constitute a Rule 11 violation. Even though district courts are given considerable discretion to determine the proper scope of a sanctions award, *see* FED. R. CIV. P. 11 advisory committee's note to 1993 amendments ("Whether a violation has occurred and what sanctions, if any, to impose for a violation are matters committed to the discretion of the trial court[.]"), Rule 11 is absolutely clear that a motion for sanctions "must describe the specific conduct that allegedly violates Rule 11(b)." FED. R. CIV. P. 11(c)(2); *see also* FED. R. CIV. P. 11 advisory committee's note to 1993 amendments ("Explicit provision is made for litigants to be provided notice of the alleged violation and an opportunity to respond before sanctions are imposed."); *id.* (same for sanctions imposed on a court's own initiative). As other circuits have recognized, "[t]he purpose of particularized notice is to put counsel 'on notice as to the particular factors that he must address if he is to avoid sanctions.'" *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 92 (2d Cir. 1999) (quotation marks omitted); *1-10 Indus. Assocs., LLC v. United States*, 528 F.3d 859, 867–68 (Fed. Cir. 2008) (same); *Anjelino v. New York Times Co.*, 200 F.3d 73, 100 (3d Cir. 2000) (same); *see also* 5A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE §§ 1337, 1337.3 n.1 (3d ed. 2011) (collecting cases holding that procedural due process requires notice and an opportunity to be heard before sanctions are imposed and that "a failure to comport with these requirements is enough to merit reversal."). Furthermore, the First Circuit has noted, under the pre-1993 Amendment version of Rule 11, that "the determination of what process is due is, in part, a function of the type and severity of the sanction." *Media Duplication Servs., Ltd. v. HDG Software, Inc.*, 928 F.2d 1228, 1238 (1st Cir. 1991).

The plaintiffs and Reifman did not have clear notice that the initial filing of the lawsuit was the conduct asserted to be the subject of sanctions. Although Newmont's motion requested reimbursement for all of its costs in defending against the entire suit, the only conduct of the plaintiffs and Reifman that was specified as sanctionable was the

filing of the motion for leave to file the Third Amended Complaint. According to Newmont, the particular reason why the motion for leave to file was sanctionable was that it failed to cure the jurisdictional defects in the Second Amended Complaint. Indeed, permeating the entire motion for sanctions is the notion that the district court's dismissal of the Second Amended Complaint for lack of personal jurisdiction was the tipping point at which further conduct by the plaintiffs and Reifman would be viewed as sanctionable. The only other conduct from this lawsuit that the motion for sanctions refers to is "repeated frivolous filings" in this case, R.89 (Motion for Sanctions at 10-11), but Newmont did not identify which previous filings in this case were frivolous and violated Rule 11. The plaintiffs and Reifman therefore did not have sufficient notice that they might be sanctioned for conduct other than the filing of the motion for leave to file the Third Amended Complaint, especially given the great severity of the sanctions awarded—over a hundred-thousand dollars and a complete prohibition against filing future lawsuits against all defendants arising out of the same issues in both state and federal courts.

Indeed, this case seems to us to be similar to *Thornton v. General Motors Corp.*, 136 F.3d 450 (5th Cir. 1998), which involved a sua sponte finding of a Rule 11 violation. In *Thornton*, the district court sanctioned the plaintiff's attorney "for filing a lawsuit . . . without first having made a reasonable inquiry into the facts underlying [the plaintiff's] claim." *Id.* at 451. The Fifth Circuit found it important, however, that this finding involved conduct that went far beyond the conduct specifically identified in the district court's show-cause order. *Id.* at 454. Rather than inform the attorney that the specific conduct that was under consideration for sanctions was the attorney's failure to make a reasonable inquiry, the district court's show-cause order noted conduct by the attorney that was narrower: "his general conduct in failing to produce evidence in support of [the plaintiff's] claim prior to the district court's ruling on [the defendant's] motion for summary judgment." *Id.* As a result, the Fifth Circuit found that the district court abused its discretion by failing to give the attorney sufficient notice of the precise violation of Rule 11 that might be addressed by the district court. *Id.* at 454–55.

The situation here is no different. Newmont's motion, which is analogous to the district court's show-cause order in *Thornton* given that both documents are required to identify specifically the sanctionable conduct, alleged only that the plaintiffs and Reifman violated Rule 11(b)(2) and (3), because the Third Amended Complaint was "presented for an[] improper purpose" and was not "warranted by existing law or by a nonfrivolous argument for [changing] the law." Newmont argued that the proposed Third Amended Complaint completely failed to address the absence of personal jurisdiction over Newmont that was fatal to the Second Amended Complaint, the dismissal of which was the tipping point at which further conduct by the plaintiffs and Reifman would be viewed as sanctionable. The district court's crucial sanctions finding here, however—the finding on which it based its monetary sanctions award—was that the plaintiffs "failed to conduct a reasonable inquiry before filing their lawsuit." R. 102 (Op. at 6). This goes far beyond the concept that the actions of the plaintiffs and Reifman became sanctionable in light of the dismissal of the Second Amended Complaint. It is therefore apparent that the "specific conduct" of the plaintiffs and Reifman that was found to violate Rule 11 was far broader than that described in Newmont's motion. As a result, Newmont's motion did not provide the plaintiffs and Reifman with sufficient notice regarding the subject of the Rule 11 proceedings, and the district court did not ensure that the plaintiffs and Reifman had sufficient notice before making its Rule 11 finding.

Furthermore, given Rule 11's clear focus on the specific conduct that is subject to sanctions and its requirement that the alleged violator be given notice and an opportunity to be heard, this error was plain. In addition, given the great amount of the monetary sanction that resulted from the violation, and the difference that may exist between what is needed to deter a frivolous lawsuit as opposed to a single frivolous filing, this error affects the plaintiffs' and Reifman's substantial rights and "seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Graham*, 622 F.3d at 455. We therefore reverse the district court's finding of a Rule 11 violation, vacate its sanctions orders, and remand for the district court to consider anew

Newmont's allegations of a Rule 11 violation by the plaintiffs and Reifman.[10]  On remand, the district court will be able to consider the parties' arguments regarding the propriety of Rule 11 sanctions and, if sanctions are found to be warranted, the proper scope of those sanctions, keeping in mind the requirements of Rule 11 and this circuit's precedents, especially as they relate to the need to deter sanctionable conduct, the need to protect the district court's ruling on personal jurisdiction over Newmont in Michigan, and the propriety of federal court injunctions against future lawsuits in state court, along with any other relevant consideration.

### III.  CONCLUSION

For these reasons, we **AFFIRM** the dismissal of all claims against all defendants by the district court, along with the district court's denial of the plaintiffs' motion for reconsideration.  With respect to the imposition of sanctions, we hold that the district court erred in the course of finding a Rule 11 violation; we therefore **REVERSE** the district court's sanctions holding, **VACATE** the order of monetary and injunctive sanctions, and **REMAND** this case to the district court to consider Newmont's motion for Rule 11 sanctions anew in light of this opinion.[11]  Each party is to bear its own costs on these appeals.  *See* Fed. R. App. P. 39.

---

[10]Because we hold that the district court erred in finding a Rule 11 violation based on conduct that had not been identified in the motion for sanctions or in a show-cause order, we need not consider the plaintiffs' remaining arguments in this appeal.

[11]At oral argument, this court requested a supplemental brief from each side on the question of whether the plaintiffs preserved the argument that the district court improperly found a Rule 11 violation that was greater than that identified in Newmont's motion for sanctions.  On March 28, 2011, after these briefs were submitted, the plaintiffs filed a motion to strike a portion of Newmont's supplemental brief on the ground that Newmont's brief exceeded the allowable page limit.  Given our disposition of these appeals, set out above, we deny this motion as moot.