NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0082n.06
Case No. 18-1666

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Feb 04, 2020

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DAWN BACHI-REFFITT, | ) | |
| | ) | |
| *Plaintiff-Appellant*, | ) | |
| | ) | |
| v. | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| **KEVIN REFFITT,** *et al.*, | ) | **COURT FOR THE WESTERN** |
| | ) | **DISTRICT OF MICHIGAN** |
| *Defendants-Appellees*. | ) | |

Before: BATCHELDER, LARSEN, and MURPHY, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Kevin Reffitt and Dawn Bachi-Reffitt had been married for almost 20 years, and actively engaged in divorce proceedings for over a year, when they finalized their divorce by mutual agreement and entered a Consent Judgment with the Grand Traverse County, Michigan, Circuit Court's Family Division ("Family Court") in April 2013. Prior to that agreement, they had been preparing for a trial in which the Family Court would decide the division of their marital property, most importantly Kevin's stake in his family's privately-held business, Peninsula Construction, a stake he had owned since 2006.

During discovery, Dawn's divorce lawyer pursued information about that asset via interrogatories and requests for production of documents. Kevin answered that he had sold it to his father, Ronald Reffitt, Sr., on February 7, 2012 (just days prior to the divorce filing), for about $150,000. Kevin produced copies of an executed option agreement, corporate consents, stock certificates, and other documents pertaining to the sale. In Kevin's trial brief, filed a month before the anticipated trial, his attorney explained that the $150,000 amount was based on an appraised value set in July 2011 and he offered that Peninsula's corporate accountant, Brad Niergarth, was

available to Dawn's attorney to answer "any and all questions relative to the financial status of the company." Kevin proposed dividing the $150,000 equally with Dawn.

As mentioned, Kevin and Dawn decided to forgo trial and instead settle the divorce and the division of marital property by mutual agreement, which they formalized via a Consent Judgment in the Family Court. Among other things, that Judgment divided the $150,000. It also includes provisions releasing all claims, acknowledging final settlement of all marital rights and obligations, providing a contractual remedy for a party's non-disclosure of assets, and reserving jurisdiction to the Family Court as necessary to enforce the Judgment.

In June 2014, Dawn moved the Family Court for relief from judgment pursuant to Michigan Court Rule 2.612(C)(1)(c), claiming that Kevin had concealed or not disclosed the full value of his stake in Peninsula.[1] Dawn alleged that Kevin's stake in Peninsula when he sold it to his father was not $150,000, as he had asserted, but was actually over $2 million. Following a hearing, the Family Court held that the motion was barred by the rule's one-year statute of limitations and further opined:

> But looking at the facts of this case[,] both parties are represented by counsel. The discovery was undertaken. . . . All the documents with respect to transferring the corporation were provided to [Dawn's divorce attorney].
>
> . . .
>
> . . . I am not seeing where there was hidden assets. . . . It was revealed -- all those assets were revealed during the course of the divorce, and I don't see any indication here of any hidden assets. . . . If you go forward and you decide[] that there is [evidence of fraud], you can always file an action for fraud in this matter. The Court [i.e., this Family Court] would be really willing to look at that.

---

[1] Dawn also claimed that Kevin had concealed or failed to disclose $1.5 million in life insurance proceeds that he received when his brother, Ronald Reffitt, Jr., died in March 2013. The Family Court initially dismissed the motion as to this claim, but ultimately considered this claim on the merits, determined that Kevin had violated the Consent Judgment's disclosure provision by concealing that asset, and awarded Dawn the entire $1.5 million pursuant to the contractual remedy specified in that provision. This is not at issue in the present case or appeal.

Dawn did not appeal or immediately pursue a fraud claim in Family Court.[2]

Instead, Dawn sued Kevin and his father in the Grand Traverse County, Michigan, Circuit Court's General Division ("Circuit Court"), accusing them of fraud in transferring Kevin's ownership in Peninsula and in Kevin's representation of the monetary value of his share. At the conclusion of a hearing, the Circuit Court determined that, even though the action was "a free standing claim for fraud," it was barred by the one-year statute of limitations. The Circuit Court also explained that, to the extent "that this is claimed to be an enforcement action to enforce the judgment of divorce," Dawn must "file[] [it] within the judgment of divorce" in the Family Court, so:

> I am going to dismiss the case without prejudice and [Dawn] can assert it, if at all, I would suggest[,] as a motion within the divorce case [in the Family Court]. But, however it's done it should be related to the divorce case not here.

From the present record, it appears that Dawn did not appeal this dismissal or return to the Family Court to pursue this claim as the Circuit Court had suggested.

Instead, in March 2017, Dawn filed the present case in federal court, naming four defendants (Kevin, his father, his father's secretary, and Peninsula) and alleging a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.*, and some state-law claims. While the RICO claim was new, the fundamental factual accusation was the same as in the Family and Circuit Courts, namely that Kevin committed discovery fraud in their divorce proceedings by misrepresenting the monetary value of his stake in Peninsula, albeit with the help of his father and his father's secretary who notarized the documents.

---

[2] It is perhaps noteworthy that in Michigan, as in most every jurisdiction, a plaintiff must plead fraud with particularity, Mich. Court Rule 2.112(B)(1), and one of the elements is reasonable reliance, *Smith Living Tr. v. Erickson Ret. Cmtys.*, 928 N.W.2d 227, 239 (Mich. Ct. App. 2018). Given the Family Court's reference to the representation by counsel and the quality of discovery, with the expectation that Dawn's attorney would be trying this issue in an adversary proceeding, it is questionable whether Dawn could plead or prove reasonable reliance.

The defendants moved for a Rule 12(b)(6) dismissal and for Rule 11 sanctions. The district court dismissed the RICO action for four separate reasons: (1) Michigan law prohibits a separate action to challenge a final judgment when, as here, relief from judgment is available by rule, namely Michigan Court Rule 2.612(C)(1)(c), which specifically provides for relief from judgments procured by fraud; (2) res judicata and comity require the federal court to defer to the state court's prior decision on this issue; (3) the Consent Judgment's release provision and jurisdiction provision place this claim in the Family Court; and (4) Dawn lacked statutory standing to maintain a RICO claim because she had established no property interest but only an expectancy interest in Kevin's share of Peninsula. *Bachi-Reffitt v. Reffitt*, No. 1:17-CV-263, 2017 WL 5998112, at *5-9 (W.D. Mich. Dec. 4, 2017). The district court further found that Dawn, or rather her attorney, had: ignored the guidance from the Family Court and Circuit Court that she move for relief from judgment in the Family Court; knew that her claims were barred by res judicata; pressed an "unreasonable reading of the Consent Judgment"; and did not cite a single case that supported her positions. The court granted the defendants' motion for Rule 11 sanctions. *Id*. at *10-11.

Dawn moved the district court to reconsider, arguing that the imposition of sanctions was unwarranted and also arguing, circumspectly, that she was right and the court was wrong on the arguments for dismissal. The court upheld its prior judgment, re-emphasizing why Dawn "had no good faith reason to file this case," *Bachi-Reffitt v. Reffitt*, No. 1:17-cv-263, Dkt. No. 47 at 5 (W.D. Mich. May 8, 2018) (Order), and further opining in a footnote:

> While the [district court's prior opinion] had no need to reach [the] [d]efendants' arguments concerning [Dawn]'s failure to properly plead the elements of her RICO claims, it would have dismissed [her] RICO claims on one or more of the grounds [the] [d]efendants cited in their brief. For example, [Dawn] failed to allege a 'pattern' of racketeering for purposes of RICO. Kevin's alleged one-off attempt to hide assets from [her] during the divorce proceeding did not constitute a closed-ended period of repeated conduct extending over a substantial period of time, and [Dawn]'s reliance on the 2007 divorce of Kevin's now-deceased brother—an

> unrelated proceeding separated by at least four years and involving different participants and alleged victims—falls short of establishing RICO's relatedness and continuity requirements. Moreover, [Dawn] failed to allege that Ronald Reffitt, Jr. or anyone else committed a predicate criminal act of mail and/or wire fraud during the 2007 divorce proceeding. [Dawn]'s attempted use of RICO in this case was not unique, and it certainly was not proper.

*Id.* at 5 n.2 (citations omitted). The court further explained that Dawn had named Kevin's father, his secretary (Wierenga), and Peninsula—mere "window dressing" to the fraud claim against Kevin—in an effort to concoct a RICO enterprise or conspiracy out of ordinary fraud. But, even including them, she had failed to state a claim under RICO because she "did not allege that Pen[insula] or Wierenga, whose sole act was notarizing the back-dated stock transfer documents, played any part in directing the enterprise's affairs, . . . [or] that Reffitt, Sr., Wierenga, or Pen[insula] committed at least two predicate acts." *Id.* at 6 (citations omitted). The court denied Dawn's motion to reconsider and made clear that it was declining to exercise supplemental jurisdiction over the state-law claims and dismissing them without prejudice. *Id.* at 7.

On appeal, Dawn argues that the district court was mistaken in all five of its reasons for dismissing her complaint: i.e., (1) Michigan's court rule for challenging a judgment procured by fraud; (2) res judicata and comity; (3) the Consent Judgment's release and jurisdiction provisions; (4) Dawn's lack of RICO standing; and (5) Dawn's failure to plead the elements of a RICO claim. If any one of these reasons is correct, then the district court was correct to dismiss the complaint. We therefore will analyze only the last reason—Dawn's failure to plead the elements of a RICO claim—because we can do so most concisely and because that failure best demonstrates why the Rule 11 sanctions were warranted in this case.

Before proceeding, however, it bears mention that in researching this issue, we found an almost unanimous belief among the courts presented with RICO claims like this one that "[c]oncealment of assets by a husband from a wife is reprehensible and may be a crime under

5

certain circumstances but that does not render it a pattern of racketeering activity perpetuated through an enterprise" for purposes of RICO. *DeMauro v. DeMauro*, 215 F.3d 1311, 2000 WL 231255, at *4 (1st Cir. 2000) (Table); *see also DeMauro v. DeMauro*, 115 F.3d 94, 99 (1st Cir. 1997) ("Divorces are frequently accompanied by disputes about property, including both interim and final allocations. Such state court authority would be threatened if civil RICO actions become the shadow proceeding for policing such disputes."); *Cohen v. Cohen*, 993 F. Supp. 2d 414, 423 (S.D.N.Y. 2014) ("[D]omestic relations disputes are rarely the nebulae from which viable civil RICO claims coalesce. They tend to involve private concerns as opposed to matters of public importance."); *Rosner v. Rosner*, 766 F. Supp. 2d 422, 426 (E.D.N.Y. 2011) ("Th[is] plaintiff is not the first person involved in a matrimonial case to attempt to bring a RICO claim against a spouse for allegedly hiding marital assets. The courts that have previously addressed this type of allegation have almost universally found such claims to be a misuse of the RICO statute."); *Davit v. Davit*, 366 F. Supp. 2d 641, 657 (N.D. Ill. 2004), *aff'd*, 173 F. App'x 515 (7th Cir. 2006) ("RICO has not federalized every state common-law cause of action available to remedy business deals gone sour. That teaching is equally apt when assessing whether every disgruntled divorce court litigant should be able to relitigate such disputes in the federal courts." (quotation marks omitted)); *Boston v. Estate of Clark*, No. 11-14935, 2012 WL 4048877, at *5 (E.D. Mich. Sept. 13, 2012) ("Other federal courts have also found that RICO was not an appropriate cause of action for a plaintiff seeking to recover marital assets or spousal support."); *Ruttenberg v. Ruttenberg*, No. 08 C 4898, 2009 WL 424548, at *4 (N.D. Ill. Feb. 18, 2009) ("It is not surprising, then, that a number of courts have concluded that the sort of fraud involved in hiding assets in connection with a divorce does not constitute a pattern of racketeering for purposes of RICO."); *Merrilees v. Merrilees*, 998 N.E.2d 147, 156, ¶ 18 (Ill. Ct. App. 2013) ("RICO was never intended to allow

plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." (quoting *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007)); *LaPorte v. LaPorte*, 621 A.2d 186, 186 (R.I. 1993) ("The wil[l]ful concealment of marital assets from the Family Court, in our opinion, does not constitute 'racketeering activity.'"); Brett R. Turner, ECONOMIC CLAIMS BETWEEN FORMER SPOUSES OUTSIDE THE DIVORCE CASE, Fam. Advoc., Fall 2016 26, 30 ("The lure of treble damages will probably continue to attract interest in RICO actions, but no reported cases so far have found RICO liability on the facts."); *but see Perlberger v. Perlberger*, No. CIV. A. 97-4105, 1998 WL 76310, at *1 (E.D. Pa. Feb. 24, 1998) (the lone case in which a court refused to dismiss a wife's RICO complaint against her ex-husband for concealing marital assets during the divorce).

We review de novo a district court's dismissal under Rule 12(b)(6). *Swanigan v. FCA US LLC*, 938 F.3d 779, 783 (6th Cir. 2019). "To survive a 12(b)(6) motion, the plaintiff must sufficiently plead facts that, when taken as true, contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *Thomas v. Noder-Love*, 621 F. App'x 825, 828 (6th Cir. 2015) (quotation marks omitted).

"Congress created a civil cause of action" under RICO "[t]o prevent organized crime from obtaining a foothold in legitimate business." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 483 (6th Cir. 2013) (quotation marks and citation omitted). "The statute provides in relevant part that any person injured in his business or property by reason of a violation [of 18 U.S.C. § 1962] may sue therefor . . . and shall recover threefold the damages he sustains." *Id*. at 483-84 (quotation marks, editorial marks, and citations omitted). RICO plaintiffs must ultimately prove that the "defendants conducted the affairs of a qualifying enterprise through a pattern of racketeering

activity" and "that the RICO violation was the proximate cause of the injury to their business or property." *Id.* at 484.

To state a RICO claim under 18 U.S.C. § 1962(c), the plaintiff must plead facts that would plausibly demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). The "pattern of racketeering activity" element requires "at least two predicate acts of racketeering activity occurring within a ten-year period[,] . . . consist[ing] of offenses [that] are indictable under any of a number of federal statutes, including the mail and wire fraud statutes." *Id.* (quotation marks and citations omitted). Moreover, "[a]lthough *necessary* to sustain a RICO claim, the pleading of two predicate acts may not be *sufficient* because [the statute] assumes that there is something to a RICO pattern beyond the number of predicate acts involved." *Id.* at 724 (quotation marks omitted; emphasis added). The plaintiff must plead "a relationship between the predicates and [] the threat of continuing activity. It is this factor of *continuity plus relationship* [that] combines to produce a pattern." *Id.* (quoting *H.J., Inc. v. Nw. Bell Tele. Co.*, 492 U.S. 229, 239 (1989)).

As pertinent to this appeal, Dawn's complaint does not allege an actionable "pattern of racketeering activity" because it pleads only a single scheme targeting a single victim, namely a scheme to conceal the true value of Kevin's stake in Peninsula from his ex-wife, Dawn. In *Moon*, 465 F.3d at 725-26, we concluded that, because all the predicate acts were directed at a single victim over a limited time frame, the claims failed to "bear the markings of the 'long-term criminal conduct' about which 'Congress was concerned' when it enacted RICO." *See also Vemco, Inc. v. Camardella*, 23 F.3d 129, 135 (6th Cir. 1994) ("We do not find that a defendant who engages in several different forms of fraud for a single purpose, to defraud a single victim through activities

8

surrounding one construction project, without more, has engaged in more than one criminal scheme."). Because Dawn did not plead a "pattern of racketeering activity," her complaint fails to state a viable RICO claim and the district court properly dismissed it.

Dawn also appeals the district court's imposition of Rule 11 sanctions. Our review is for abuse of discretion. *Indah v. S.E.C.*, 661 F.3d 914, 926 (6th Cir. 2011). Importantly, because it is more "[f]amiliar with the issues and litigants, the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990). Here, the district court explained that Dawn and her attorney "had no good faith basis to file this case," knew that they did not, and could offer no "non-frivolous" explanation as to why they did so anyway. This is enough to demonstrate that the court did not abuse its discretion. But another point, specific to RICO and Dawn's (and her attorney's) actions here, bears mention:

> A civil RICO claim is an unusually potent weapon—the litigation equivalent of a thermonuclear device. For this reason, there is a strong temptation for plaintiffs to raise a RICO claim, even when the claim is obviously frivolous. To deter such conduct, courts have not hesitated to impose Rule 11 sanctions as a sanction for bringing frivolous RICO claims. A sanction under Rule 11 is appropriate where a RICO claim is filed even though no reasonable and competent attorney would believe the claim has merit.

*Martinez v. Martinez*, 207 F. Supp. 2d 1303, 1308 (D.N.M. 2002), *aff'd in part, vacated in part*, 62 F. App'x 309 (10th Cir. 2003) (quotation marks and citations omitted).

For all of the foregoing reasons, we AFFIRM the judgment of the district court.